CASE 35—PETITION EQUITY—FEBRUARY 7.

# Meador v. Meador, &c.

APPEAL FROM MEADE CIRCUIT COURT.

| | |
|---|---|
| 88 | 217 |
| 106 | 277 |
| 88 | 217 |
| 116 | 460 |
| 88 | 217 |
| 116 | 460 |
| 88 | 217 |
| 129 | 582 |

1. DESCENT—LIEN—EQUITY—SURETY.—Land descended to heirs with an execution lien upon it for a debt for which one of the heirs was primarily bound, the ancestor being merely surety in the debt. In a suit by the heirs for a division of the land the execution creditor asserted his lien, and the chancellor ordered that the land allotted to the heir who was primarily liable for the execution debt, be first subjected to its payment. *Held*—That this was proper. The fact that the creditor could not have directed the sale of some particular portion of the land presents no reason why the chancellor can not do so in order to prevent litigation and hardship. The ancestor, the surety, could have maintained an action to compel the principal to discharge the debt, or to subject his property first to its payment, and there is no reason why the rule should not extend to the heirs of the surety, when, as between them and the principal debtor, their property is secondarily liable for the debt.

2. HOMESTEAD.—Where property has come to a debtor by descent he may be entitled to a homestead therein, although the debt to which

it is sought to be subjected was created prior to the time at which he received the property, but as the property in controversy here descended with the lien upon it, as against that lien the heir is not entitled to a homestead.

CHAPEZE WATHEN AND C. C. FAIRLEIGH FOR APPELLANT.

One to whom land descends is entitled to a homestead exemption as against an antecedent debt, although he has not acquired possession at the time the attempt to subject the land is made. (Jewell v. Clark, 78 Ky., 393.)

J. W. LEWIS AND SON FOR APPELLEES.

A surety may maintain an action against the principal and co-sureties to compel the principal to pay or the co-sureties to contribute. (Morrison v. Poyntz, 7 Dana, 307.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

In 1876 the appellant, John H. Meador, with his father, Paschal Meador, as his surety, executed to R. J. Patteson a note for two thousand dollars, payable on demand, and bearing ten per cent. interest from date. About three years thereafter the appellant, with the written consent of the surety, mortgaged to Patteson certain real estate to pay the debt. The creditor brought suit in 1881, and obtained not only a decree enforcing the mortgage lien, but a personal judgment against John H. and Paschal Meador. A certain sum was realized by the sale of the mortgaged property, but not enough to pay the debt. An execution issued upon the judgment and was levied upon two tracts of land of Paschal Meador, but only one was sold, the other remaining in lien under the execution. At this time Paschal Meador died, leaving the parties to this action, except Patteson, as his heirs. His widow made several payments upon what remained unpaid of the debt, leaving a balance still owing, however, of two

hundred and eighty-six dollars and sixty cents and interest.

In 1886 a portion of the heirs of Paschal Meador instituted legal proceedings to divide his unsold land, and which was subject to the execution lien of Patteson for the remainder of his debt. A judgment was rendered therefor, and the division had, a certain portion of it being allotted to the appellant as one of the heirs. The appellees brought this action in equity before the confirmation of the division of the land, asking that the interest of the appellant in it be first subjected to the Patteson execution lien, as he was the principal in the debt; and if the division already made should be confirmed, that his allotted portion be first sold; and if not, that then his interest in the land be first subjected to the payment of the debt.

The pleadings admit the facts above recited, and also the insolvency of the appellant. A demurrer to the petition having been overruled, the appellant filed an answer, averring that the execution levy was upon the entire tract of land; that he was a house-keeper with a family; owned no real estate save his interest in this land, which was worth less than one thousand dollars, and that as soon as the division of it among the heirs was completed, he intended to use his portion as a homestead. A demurrer was sustained to the answer, and judgment entered, directing that the portion of the land which had now been confirmed to the appellant should be first subjected to the payment of the remainder of the debt. He now complains. It is admitted he was the principal in the debt and that he is insolvent. It appears his father, although only his

surety, was compelled, by execution sale, to pay a considerable portion of what has heretofore been paid upon the debt.

No equity in favor of the appellant addresses itself to the court, and the inquiry arises, did any legal reason or rule exist forbidding the subjection of his interest in the land to the payment of his debt, or in the manner appellees have adopted to reach it?

It is urged that the demurrer to the petition should have been sustained, because the execution lien was upon all and not a part of the land; and as the creditor could not have directed the sale of a particular portion of it, neither could the chancellor; also because the creditor's remedy was complete at law as well as that of the appellees, they having a right, as is claimed, after payment of the judgment and its assignment to them, to enforce it against the appellant's portion of the land. The execution creditor is not complaining. It is only the principal debtor, who rightfully and legally is the one to pay the debt. Moreover, the chancellor has not lifted the lien from all the land and placed it upon a part of it, but has merely directed that in enforcing it the land of the party who is primarily bound for the debt shall be first subjected. This is certainly a proper office of equity. Because the creditor, at his caprice, could not have directed the sale under his execution of some particular portion or interest in the land, presents no reason why, to prevent additional litigation, and probable loss to innocent parties, the chancellor should not, upon a proper state of case, interfere, and control the manner of the sale.

Prior to the adoption of the Code of Practice a surety

could maintain a bill to compel the principal to discharge the debt. Morrison v. Poyntz, 7 Dana, 307. The Code, section 661, expressly gives this right. It avoids multiplicity of action, and is, moreover, just to the surety. It is more adequate to his protection than any legal remedy. This is all the appellees have done. Their property being liable to the creditor, they stand in the place of their ancestor, and he unquestionably could have maintained an action to compel the appellant to discharge the debt or to subject his property first to its payment. We see no reason why the rule should not extend to the heirs of the surety when, as between them and the principal debtor, their property is secondarily liable for the debt. If it be subjected to its payment they can look to him for reimbursement; and if the property of both the principal and the surety be in lien to the creditor, the principal, who, as between himself and the surety, is both morally and legally first bound to pay, will not be heard to say that equity, the great fountain of remedial justice, can not compel him to do so.

The fact that one who is otherwise entitled to a homestead acquires it after the creation of the debt does not deprive him of the right to it, if it comes by descent. In such a case no estate of the debtor has been diverted, and the creditor can not say that the means upon which he relied for payment have been thus invested. He has no ground of complaint. The statute denies the debtor the homestead, if obtained by purchase by him, because it is probable the possession of the very means thus used enabled him to obtain the credit; but this reason for its liability in case of purchase fails where he gets

it by descent. Jewell v. Clark's Ex'r, 78 Ky., 398. In the case now presented, however, the lien was created upon the land when it belonged to Paschal Meador. It descended to the appellant with the lien upon it, and as against it he has no homestead.

Judgment affirmed.