BILLINGS & SPENCER CO. et al. v. VAN WAGONER & WILLIAMS HARDWARE CO.

(Circuit Court, N. D. Ohio, E. D. December 23, 1899.)

No. 5,612.

PATENTS—INVENTION—COMMUTATOR BAR FOR DYNAMO-ELECTRIC MACHINES.

The Billings patent, No. 392,490, for a commutator bar for dynamo-electric machines (claim 1), which covers, as an article of manufacture, a bar made of commercially pure copper, rolled or drawn, and subjected to the drop-forging process, in view of the prior art and the well-known character of the process by which the article is made, does not disclose patentable invention, and is void.

This was a suit in equity for infringement of a patent. On final hearing.

Thomas B. Hall, for complainants.

Squire, Sanders & Dempsey and Mitchell, Bartlett & Brownell, for defendant.

TAFT, Circuit Judge. This is a bill to enjoin the infringement of a patent issued to Billings November 6, 1888, for a commutator bar for dynamo-electric machines. A dynamo-electric machine produces electricity by the rotation of conducting coils of wire in close proximity to the poles of a powerful magnet. These conducting coils are wound upon an iron core, generally of a cylindrical form, which is journaled so as to rotate between the opposite poles of the magnet; the poles being shaped so as to embrace the cylindrical rotating part. The rotating part is known as the "armature," and the stationary magnet is known as the "field magnet." The commutator of a dynamo-electric machine is the means by which the generated electricity from the rotating armature is collected. The electric currents generated are alternating, and the commutator, as its name indicates, commutes or changes these currents, flowing first in one direction and then in another, into direct currents, flowing constantly in one direction. The endless coil of the armature is connected with a series of commutators or metallic plates, grouped together in cylindrical form about the same shaft as that upon which the armature rotates, so as to be concentric with it, and to rotate with it. These commutators are segmental in form, and arranged around the shaft so as to complete the cylinder. They are insulated from each other by insulating material, and their outer surfaces come in succession under contact brushes, and deliver to the brushes the current which they receive from the coil. Each commutator bar is connected to the generating coil.

The first claim of this patent, and the one which is said to be infringed, is as follows:

"(1) As an article of manufacture, a full-sized commutator bar for dynamo-electric machines, which has two arms whose longitudinal axes form an angle one with the other, and which is composed throughout of one piece of unalloyed copper of an almost homogeneous molecular structure,—the fiber or grain of the copper being so arranged as to be everywhere parallel with the axis of the arm, and of the greatest possible density,—substantially as and for the purpose described."

The specifications describe the method by which the article patented is made. Commercially pure copper, in a rolled or drawn form, is heated, and then upset or bent roughly into the general shape to be reached. The piece of copper is then subjected to the drop-forging process,—a well-known mode of dealing with metals,—by the use of a heavy steam hammer and die. It is admitted that the shape of the commutator bar of the patent is old. It is admitted that copper was a material frequently used before for making commutator bars. It is admitted that it was known and well understood that the density and uniformity of molecular structure throughout the copper increased its conductivity. In prior patents in which dynamo-electric machines were described, commutators made all of copper are shown by the specifications. The method of their making does not appear. Cast-copper commutator bars do not effect as good a result as commutator bars produced by the method of drop forging, for the reason that in the casting air bubbles are apt to form on or near the surface, which is brought into contact with the brushes, and, as the copper wears away, will produce sparking and a waste of electrical energy. Rolled or drawn copper bars, however, had been used before this time for the surface brought into contact with the brushes. These bars, made from commercially pure copper, have substantially the same density, and the same freedom from air bubbles, as the patent in suit. The process of drop forging does not increase the density or uniformity of molecular structure to an appreciable degree. The rolled or drawn copper bars, however, had not been bent so as to make the smaller arm, to which was connected the wire from the generating coil, of the same piece; but the upward arm had been riveted and soldered to the lower and principal arm of the commutator. The parallelism of the fiber with the longitudinal axes of the arms is something which has been dwelt upon at great length in the expert evidence for the complainant, but the result of the experiments of the expert, when subjected to cross-examination, shows that the increase in conductivity of the commutator due to this parallelism is practically unworthy of note. The fact is that the commutator bar is used to transmit a current carried through a very small wire from the coil, and the large increase in the mass of copper or other material used in its manufacture over the mass of copper wire through which the current is conducted from the coil makes the question of the conductivity of the commutator comparatively unimportant, because the larger mass will certainly take care of and conduct all the current that can come through the small wire. So far as the necessity for a highly-conductive surface with which to contact with the brushes is concerned, copper of practically the same density, homogeneity of molecular structure, and parallelism of fiber had been used before for the contact surface. The only question is whether the application of drop forging, so as to have the instrument made of one piece, with parallelism of fiber and the same density throughout, is patentable, in view of the fact that drop forging was a well-known method of treating metals, and in view of the fact that the advantage, if it be an advantage, of having the commutator made of

one piece, had been foreshadowed and suggested in the prior art. We think a' negative answer must be given to this query. The invention was simply the taking of commercially pure copper, and drop-forging a commutator bar. The somewhat large-sounding phrases of the claim in describing the supposed characteristics of a commutator bar drop-forged from a bar of commercially pure copper ought not to mislead the court into giving a monopoly to a very simple instrument, made in a form, out of materials, and by methods, all of which were well known at the time the patent was taken out.

Much reliance is placed upon the fact that the commutator bar has had a large sale, to show that its adoption involved invention. This alone, however, does not prove the patentability of an alleged invention. The complainant company is a manufacturer of many articles by drop forging, and, in the rush for the manufacture of electrical machines, it might very well be that a large drop-forging establishment could, by reason of its economy in manufacture, secure the patronage of the three or four large electrical companies, by fixing a reasonable price for the instrument, and thus seem to secure an acquiescence in its claim of a patent right, because there was no sufficient motive for its infringement on the part of those to whom the commutators were offered for sale. However this may be, after reading all the voluminous record carefully I am clearly of opinion that the use of the drop forging for the commutator bar does not produce an article which, in view of the prior art, entitles its first discoverer and user to a patent and monopoly. The bill is dismissed.