CASE 44—ACTION BY LYDIA ROARK AGAINST J. J. C. BACH AND OTHER:
 INVOLVING TITLE TO A HOMESTEAD.—OCT. 16.

# Roark v. Bach &c.

116   457
f136   801

APPEAL FROM PERRY CIRCUT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.   REVERSED.

HOMESTEAD—EXEMPTIONS—DONATION—RIGHT OF OWNER TO CONVEY
 TO WIFE.

Held:   1. An illegitimate son on the death of his putative father
 received from decedent's widow and heirs a parcel of land be-
 longing to the estate.   The land was worth less than $1,000.
 The son lived on it with his family.   HELD, that the land was
 a homestead, exempt from the liability of a judgment rendered
 against him before he acquired it, he not being a purchaser
 within the meaning of the homestead law making land purchased
 by a debtor after the creation of the debt liable therefor.
2. A debtor entitled to land as a homestead has the right as against
 his creditor to give it or its proceeds to his wife.

BAILEY P. WOOTTON AND JESSE MORGAN, FOR APPELLANT.

The evidence in this record shows that L. C. Roark came in
 possession of a tract of land in the division of his reputed
 father's estate.   Whether he was a legitimate child or not is
 not material, as he acquired it by reason of his claim as an
 heir.   He traded this piece of land to Hurst for the land in
 controversy and conveyed the Hurst land to his wife, Lydia
 Roark.   He resided on it with his family, claiming and occupy-
 ing it as a homestead.   It was not worth over $500.   Prior to
 his acquiring the original tract, he owed one Williams a debt,
 on which he was sued, judgment obtained, and an execution
 levied on the Hurst land, and it was sold and purchased by
 Bach.

Our contention is that the land was not subject to sale, but
 was exempt to the plaintiff, Lydia Roark, and her husband as
 a homestead.

And being exempt, it was not a fraud in the husband to con-
 vey it to his wife, as one has a right to do as he pleases with
 exempt property so far as his creditors are concerned.

AUTHORITIES CITED.

Ky. Stats., secs. 1656 and 1659; 91 Ky., 639; 83 Ky., 78; 87 Ky., 511; Morehead v. Morehead, 25 S. W., 750; 42 S. W., 91; Stults v. Sale, 92 Ky., 5; 78 Ky., 630; 92 Ky., 164; Jewel v. Clark, 78 Ky., 398; 1. S. W., 401; Wing v. Hayden, 10 Bush, 276; Thompson v. Huffner's Exr., &c., 11 Bush, 353; Brooks, &c., v. Collins, 11 Bush, 622; 80 Ky., 152; 4 Bush, 51; 1 Bush, 110; 6 R., 458; 7 Bush, 565.

JOHN E. PATRICK AND KELLY KASH, FOR APPELLEES.

The record shows that L. C. Roark, the husband of appellant, was an illegitimate son of J. B. Roark. When it came to partitioning his estate among his heirs this son asserted that he had been adopted as a legal heir, and after a futile effort to establish this fact the widow and children of J. B. Roark had laid off to him a tract of land out of the home farm. Before he acquired this land, he owed a debt to one Williams, who died, and the debt came into the hands of Hagins, his administrator. Roark exchanged a portion of this land to Hurst for the lot in controversy and had the lot conveyed to his wife, Lydia Roark, but the deed was never recorded.

Hagins, administrator of Williams, sued on the note, obtained judgment, sued out an execution, had it levied on the lot and bid it in for himself upon the idea that Roark had taken the title to himself.

After this Hagins transferred his bid to appellees, who paid him its reasonable value, and made improvements on the lot, and this suit was brought to evict them.

Appellant and her husband attempt to avoid the force of their fraud by showing that appellee, Bach, was interested in the exchange of the property and assisted in the negotiations, wrote the deed, and knew the lot was conveyed to appellant. But in this they fail.

We insist that the record is conclusive of the fact that Bach, in good faith, believed that the title had been taken to L. C. Roark. It is at least conclusive that his property paid for it.

It is shown (1) that Roark did not inherit the land he exchanged for this lot; (2) that he created the debt for which this lot was sold before he acquired the land that was exchanged for it; (3) that he retained a homestead in the lands he acquired; that is, that he did not exchange the whole tract, but kept that part where he resided; (4) that the conveyance to his wife was voluntary.

We insist, *first*, that he was not entitled to a homestead in this

land as against a pre-existing debt; *second*, that appellees having parted with their money upon the faith that he had taken title to this land himself, and they having failed to record the deed showing title in appellant, she is estopped from asserting title to it.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

L. C. Roark, husband of appellant, Lydia Roark, was an illegitimate son of J. B. Roark, and upon the death of the latter, and in an action to settle the estate or partition the land, he claimed that he had been, by proper orders of court, adopted as an heir at law of his putative father. This was denied, and the evidence tends to show that the claim had no foundation in fact. However, the widow and children agreed to and did allot him out of the home farm a parcel of land of less value than $1,000, upon which he lived with his family and claimed it as his homestead. Before he acquired the land he became indebted to one Williams, whose personal representative reduced the claim to judgment, and to pay which the lot in Hazard, Perry county, was sold under execution, and by virtue of which sale appellees claim it. It was sold as the property of L. C. Roark. While he was living on his homestead with his family, he sold or traded part of it to one Hurst, and as part consideration received the lot in controversy. In the exchange of deeds the lot was conveyed to his wife, the appellant, but she did not have her deed recorded before the sale under the execution. The question before us is, did the wife acquire title to the lot? Under the statutes regulating homestead rights, the homestead of L. C. Roark would have been subject to the payment of the debt if he had purchased it after the debt was created. This court, by numerous decisions, has so interpreted the statute. The evident intention of the General Assembly was to prevent

the debtor from converting money or property which could
have been subjected to the payment of a debt into a home-
stead exempt therefrom. It has been held that when a
debtor has acquired by descent or devise property after the
creation of a debt, he is entitled to a homestead in it as
against the debt. Meador v. Meador, 88 Ky., 217, 10 R.,
783, 10 S. W., 651; Jewell v. Clark, 78 Ky., 398; Pendergest
v. Heekin, 94 Ky., 384, 15 R., 180, 22 S. W., 605. To so
hold is not violative of the letter or spirit of the statute.
In such case the creditor has not been prejudiced, because
the debtor has not converted any debt paying part of his
estate into exempt property. In this case the debtor did
not purchase the land. It was given to him by the widow
and children of the deceased in consideration that he was
the latter's illegimate son. It was not purchased in the
meaning of the homestead law; no part of the debtor's
estate was converted into it; the creditor was not preju-
diced because it was given to him. It would be an exceed-
ingly narrow view to hold that the debtor acquired the
land by purchase in contemplation of the statute. Home-
stead laws should be liberally construed, so as to carry out
the purpose of their enactment. We conclude that the
debtor was entitled to the land as a homestead when he
sold or traded part of it to Hurst. This being true, did he
have the right to give it or its proceeds to his wife? We
are of the opinion that he had that right. The creditor
could not seize and sell it to pay his debt. He could not
restrain or interfere with the alienation or sale of it. He
had the right to sell it, with or without consideration, re-
gardless of the claim of creditors. Tong, etc., v. Eifort,
etc., 80 Ky., 152, 3 R., 647. This court has held that the
owner of a homestead can dispose of it by will. It nec-
essarily follows that the husband had the right to give the

homestead to his wife. If he could give her that, then he could likewise allow her to receive the proceeds. Such act was not prejudicial to the rights of his creditors.

The judgment is reversed for proceedings consistent with this opinion.