### In re BAKER.

(Circuit Court of Appeals, Sixth Circuit. May 3, 1910.)

No. 2,008.

1. COURTS (§ 366*)—EXEMPTIONS—LAW GOVERNING.

The right of a bankrupt to exemptions under Bankr. Act July 1, 1898, c. 541, § 6a, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), is to be determined by the law of the state as construed by its highest court, if such a construction has been clearly given.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*]

2. BANKRUPTCY (§ 396*)—HOMESTEAD EXEMPTION—KENTUCKY STATUTE.

Ky. St. § 1702 (Russell's St. § 4661), exempts as a homestead "so much land including the dwelling house and the appurtenances owned by debtors who are actual bona fide housekeepers with a family, resident in this commonwealth, as shall not exceed in value one thousand dollars; but this exemption shall not apply * * * if the debt or liability existed prior to the purchase of the land."    Section 1705 (Russell's St. § 4664), provides that where the real estate in the opinion of the appraisers is of greater value than $1,000, and not divisible without great diminution of its value, it shall be sold, and $1,000 of the proceeds shall be paid to the debtor to enable him to purchase another homestead. *Held*, under the construction placed on such provisions by the Court of Appeals of the state, and the liberal rule of interpretation also announced by such court, which gives a debtor a reasonable time after acquiring unimproved land to convert the same into a homestead, that where a bankrupt within a few days before his bankruptcy acquired by descent an undivided interest in certain unimproved lands, not capable of division, and the proceeds of such interest, when sold, were less than $1,000, the bankrupt was entitled to the same as a homestead exemption; his intention to use the money to acquire a homestead being unquestioned.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 668; Dec. Dig. § 396.*]

3. HOMESTEAD (§ 56*)—NATURE AND EXTENT OF RIGHT—KENTUCKY STATUTE.

Under the homestead statute of Kentucky, as construed by the Court of Appeals of the state, the fact that a debtor has received the value of

---

one homestead exemption from the proceeds of land sold does not debar him from the right to the exemption of another homestead, subsequently acquired, after he has expended such proceeds, as against the same debts.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 81, 82; Dec. Dig. § 56.*]

4. HOMESTEAD (§ 13*)—KENTUCKY STATUTE—EFFECT OF RESIDENCE ON WIFE'S LAND.

Under the homestead statute of Kentucky, as construed by the Court of Appeals of the state, the fact that a debtor is living with his family on land owned by his wife does not debar him from the right to claim a homestead exemption in lands of his own.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 14; Dec. Dig. § 13.*]

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Kentucky, in Bankruptcy.

In the matter of E. H. Baker, bankrupt. Petition by the bankrupt for revision of an order of the District Court. Reversed.

O. M. Rogers, for petitioner.
S. W. Tolin, for respondent.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge. This is a proceeding to revise in matter of law a judgment denying to the petitioner a homestead exemption in certain real estate. The petitioner was adjudged a bankrupt under voluntary proceedings begun July 31, 1908. He presented with his petition and schedules his claim to the exemption under section 1702, Ky. St. (Russell's St. § 4661). His real estate consisted of an undivided one-fifth interest in three parcels of land, which descended to him upon the death of his brother in June, 1908. The lands were neither improved nor susceptible of partition; and the trustee in bankruptcy, under order of the referee made in November, 1908, sold the interest of the bankrupt in the lands for $926, and set apart the whole of the proceeds of sale to the bankrupt as exempt in lieu of his claim to a homestead. Prior to the bankruptcy proceedings some of the petitioner's creditors, whose claims antedated the inheritance, commenced suits in attachment and otherwise to subject the land to the payment of these debts. These creditors objected to any allowance of a homestead, and the order of the referee was set aside by the court below.

In view of Bankr. Act July 1, 1898, c. 541, § 6, 30 Stat. 548 (U. S. Comp. St. 1901, p. 3424), the validity of the action of the trustee in setting apart the bankrupt's exemption and the rights of the bankrupt in that behalf are to be tested by the law of Kentucky. The federal courts are accustomed in such cases to follow the decisions of the court of last resort of the state whose laws are so drawn in question. In speaking of the Constitution and statutes of Texas respecting homestead exemptions in a proceeding like the present one in Duncan v.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ferguson-McKinney Dry Goods Co., 150 Fed. 269, 271, 80 C. C. A. 157, 159, Circuit Judge Shelby said:

"It has been the policy of the state of Texas in its Constitution and legislation, as construed by the decisions of its Supreme Court, to favor by liberal interpretations the exemptions in favor of debtors. These decisions, construing the state Constitution and statutes, are as binding on this court as the Constitution and statutes themselves."

See, also, McCarty v. Coffin, 150 Fed. 307, 310, 80 C. C. A. 195; In re Wood (D. C.) 147 Fed. 877, 878; Huenergardt v. Brittain Dry Goods Co., 116 Fed. 31, 33, 53 C. C. A. 505; In re Irvin, 120 Fed. 733, 734, 57 C. C. A. 147; In re Meriwether (D. C.) 107 Fed. 102; In re Pope (D. C.) 98 Fed. 722; Loveland on Bankruptcy (3d Ed.) § 177, p. 514.

Since the federal courts cannot administer or distribute exempted property as an asset of the bankrupt's estate, or do more than to set it apart to the bankrupt (Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061), this practice of the courts would seem to be in accord with the course pursued by Mr. Justice Gray respecting a dower right under the bankruptcy act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) in Porter v. Lazear, 109 U. S. 84, 3 Sup. Ct. 58, 27 L. Ed. 865. See, also, In re Petition of Carrie E. Hays (decided by this court March 8, 1910) 181 Fed. 674.

The court below in terms recognized the binding effect in such matters of decisions of courts of last resort of the states in which the questions arise; but, as we understand his opinion the learned judge did not think any rule of decision on the present issue was settled in Kentucky. He said:

"At the outset I would emphasize that the homestead exemption is purely statutory. It is created by statute, and it exists only as it is so created. The courts cannot adjudge that to be such an exemption which is not such by the terms of the statute according to their intent and meaning. They are concerned solely with determining what that true intent and meaning is. This court, however, is not entirely free to do this. It is limited by any construction of the statute put forth by the Kentucky Court of Appeals, at least if it clearly appears that such is its construction, and there is no reason to think that in any future case it will not adhere thereto. I recognize fully this restriction upon me, and have no disposition to go beyond it. But the proper standpoint from which to view any particular construction of the statute by that court, and to determine accurately just what it is, is one's own construction. I will therefore at the first undertake for myself to ascertain the statute's true intent and meaning."

We of course agree that where the decisions of the state court are in conflict, and point to no definite rule touching the construction of a statute of the state, the federal courts are quite as much at liberty to place their own construction upon the statute as they would be if the state court had not construed it at all. But if there be a rule of decision which is reasonably clear with respect to a given statute, we think the federal courts are bound in a case like this to follow the rule, rather than to undertake to determine upon their own interpretation whether the state court may not change the rule in the future. The statute in question provides that:

"* * * there shall, on all debts or liabilities * * * be exempt from sale under execution, attachment or judgment, except to foreclose a mortgage

given by the owner of a homestead, or for purchase money due therefor, so much land including the dwelling house and the appurtenances owned by debtors, who are actual bona fide housekeepers with a family, resident in this commonwealth, as shall not exceed in value one thousand dollars; but this exemption shall not apply to sales under execution, attachment or judgment, if the debt or liability existed prior to the purchase of the land, or of the erection of the improvements thereon."

It is further provided in substance by section 1705 that where real estate—

"in the opinion of the appraisers, is of greater value than one thousand dollars, and not divisible without great diminution of its value, then the same shall be sold, * * * and one thousand dollars of the money * * * shall be paid to the defendant to enable him to purchase another homestead."

The first claim urged on behalf of petitioner is that the Court of Appeals has under section 1702 established a distinction between property held by purchase and that held by descent, and that this is especially pertinent here, because, as before stated, the land in question was devolved upon petitioner by descent, and the debts in question were incurred before that event. This distinction is thus stated in Jewell v. Clark's Ex'r, 78 Ky. 398, 399:

"The object of this provision was to prevent debtors from purchasing homesteads after creating debts or liabilities and then claiming the exemption against such debts. The means with which a homestead was purchased might be the very means to which the creditor looked for payment, and gave the debtor credit which enabled him to create the debt. * * * But when the debtor derives title to the homestead by descent, no injury is done to the creditor in exempting the homestead so acquired."

Jewell v. Clark's Ex'r was decided in 1880. It was approved and followed in 1889 in Spratt v. Allen, 106 Ky. 274, 277, 50 S. W. 270. The case was also approved by the same court in Dwelly v. Galbraith, 5 Ky. Law Rep. 209, Meador v. Meador, 88 Ky. 217, 222, 10 S. W. 651, Hester v. Lynn, 49 S. W. 431, 20 Ky. Law Rep. 1460, 1461, and again in 1906, in Roberts v. Adams, 96 S. W. 554, 29 Ky. Law Rep. 848, through citation of Spratt v. Allen and the statement that all the former decisions of the court are there reviewed; and as late as 1908 Jewell v. Clark's Ex'r was approved and followed in Burrow v. Maxon, 129 Ky. 578, 581, 112 S. W. 661.

We think it clear that these decisions establish the distinction urged respecting property acquired by purchase and property derived by descent, and that this renders inapplicable most of the decisions relied on by the creditors. It is true that in Meador v. Meador, supra, homestead was denied, but only because the land "descended to the appellant with a lien upon it, and as against it he is not entitled to homestead." Creager v. Creager, 87 Ky. 451, 9 S. W. 380, was also distinguished from the cases laying down the rule mentioned, for the reason that the indebtedness against the claimant "was created after he acquired said property by descent, and he had at no time resided on said land as a housekeeper until after the assignee had sold by order of court the whole of said lands." But these decisions rather emphasize than weaken the rule.

It was, however, successfully objected in the court below that, since there were no improvements upon the land in question, it could not be

regarded as a homestead within the meaning of the statute. In Dwelly v. Galbraith, supra, Dwelly had inherited an undivided interest in 10 acres of land from his father. After the death of the father Galbraith caused an execution to be levied on this undivided interest. Before sale was made Dwelly placed improvements on a portion of the land with the consent of his brothers and sisters, and moved on it with his family, and on the day of sale claimed it as his homestead. On this state of facts it was held (5 Ky. Law Rep. 210):

"In the case before us the title was derived by descent, and the appellant was entitled to a reasonable time, depending upon the circumstances, to enter and erect improvements on his share, so as to make it fit to occupy as a homestead. Until he neglects a reasonable opportunity to enter, he should not be deprived of his right to make a homestead out of his patrimony, over which he has no control till his father's death. This position is supported by the analogous doctrine that allows time to sell one homestead and remove to another."

It was held, however, in that case, that the improvements which Dwelly had placed upon the unimproved land after the death of his father could not be treated as part of the exemption, for the reason that the statute (as laid down in Jewell v. Clark's Ex'r)—

" 'was to prevent debtors from purchasing homesteads after creating debts or liabilities, and then claiming the exemption against such debts,' or erecting improvements on their lands after creating debts, perhaps to purchase the very material with which the improvements are made, or by reason of which he is enabled to erect them, and then claim their exemption."

In Spratt v. Allen, supra, the deceased mother of Spratt had been seised of land in which her son inherited an undivided interest of one-twelfth. At the time of his mother's death he was living on land owned by his wife, and later he moved with her into the house formerly occupied by his mother, and lived there until the tract was partitioned. This occurred within a few months, and there was assigned to him 11 acres. He built a house on the portion so assigned to him, but the property was afterwards sold under an execution in favor of Allen. The debt in question was incurred prior to the death of Mrs. Spratt. Say the court (106 Ky. 277, 50 S. W. 271):

"One to whom land descends has a reasonable time after he thus acquires an interest in it to move upon it and claim a homestead therein."

In Roberts v. Adams, supra, the facts were so nearly like those of the present case, so far as concerns this question, that we think it sufficient simply to quote the conclusion reached (96 S. W. 554, 29 Ky. Law Rep. 849):

"This court has uniformly maintained a distinction, in construing the homestead statute, between land acquired by purchase and that acquired by descent. As to the first, the statute is not available as against debts arising before purchase; but the contrary rule applies with reference to [land] acquired by descent. As to this the debtor is given a reasonable time in which to convert his inheritance into a homestead. What is a reasonable time, where the intention to convert is present, is a matter of fact. In the case under consideration the debtor could not occupy the land as a homestead for two reasons: First, it was unimproved and rough land, unsuitable for a home; and, second, he only owned an undivided interest in the tract which, not being divisible without materially depreciating its value, its sale as a

whole was necessary. Therefore we conclude that a reasonable time, within the meaning of the rule under discussion, was such time as the land could be sold by judicial procedure and the price divided among the owners."

These decisions are criticised by the court below as going beyond the terms of the statute, and the last one also as not being officially reported. The last suggestion is, of course, correct; but the report must have been reasonably accurate, because the opinion appears to be clearly in accord with those decisions which admittedly were reported officially. We venture to suggest with deference that the other criticism is not conclusive. The pertinent language of the statute is:

"So much land including the dwelling house and appurtenances owned by debtors, who are actual bona fide housekeepers with a family, resident in this commonwealth, as shall not exceed in value one thousand dollars."

The words "including the dwelling house and appurtenances" would seem to be precautionary language, used to avoid possible exclusion of improvements in valuation, rather than necessarily to require the actual existence of such improvements. The whole language (including section 1705 [Russell's St. § 4664]) is apparently open to the interpretation that, where land is involved at all in an exemption, the legislative intent is to allow an exemption in real property equal to a value of $1,000, no matter whether it comprises land alone, or land and improvements. This is but in consonance with the rule of interpretation, announced by the Court of Appeals, that the homestead laws should be liberally construed. Roark v. Bach, 116 Ky. 460, 76 S. W. 340; Bennett v. Baird, 84 Ky. 554; Green & Sons v. Pennington, 123 Ky. 837, 841, 97 S. W. 766.

But above all, since the Court of Appeals has several times and in express terms construed the statute to apply to unimproved lands, we do not feel at liberty to refuse assent. We are the more strongly of this opinion in this case for the reason that no denial is made of the petitioner's avowed intention to employ his portion of the proceeds of sale in securing a homestead, or of his prompt effort to carry out that intention.

It appears that in 1894 petitioner owned a farm in Kentucky, and sold it, and removed to Cincinnati; also that the claims of the present creditors were then existing. It is contended that he is not entitled to a second exempted homestead as against those creditors. But it is not claimed that the bankrupt has any of the sales proceeds of the farm. We think the contention is inconsistent with the decisions of the Court of Appeals, which in substance declare a right in a housekeeper to sell one exempted homestead and invest the proceeds in another, equally exempt. Baker v. Kash (Ky.) 113 S. W. 820; Green & Sons v. Pennington, supra.

The only other objection made by the creditors is that at the time the petitioner inherited his interest in this land he was living with his wife and family on a farm in Kentucky belonging to her, and so was in the enjoyment of a homestead. The truth is, however, that this farm was valued at only about $8,000, and at the time of the inheritance there was an order of sale outstanding to subject the farm to the payment of a judgment to satisfy a debt of the bankrupt for $5,-000. Whether the sale was made, and anything saved to the family

out of the proceeds, does not appear. But the complete answer is stated in Spratt v. Allen, 106 Ky. 277, 50 S. W. 271:

"It is only at the death of his wife, if at all, that a husband can claim a homestead in her land. Whilst the wife lives, the husband is no more entitled to have assigned to him out of her land a homestead, as exempt from the payment of his debts, than he would out of that owned by anybody else. Summers v. Spriggs [35 S. W. 1033] 18 Ky. Law Rep. 206. The exemption which the law gives him is of his own property, not that of his wife. Her property is not liable to the payment of his debts. Johnson v. Kessler, 87 Ky. 460 [9 S. W. 394]."

We do not feel called upon to comment on all the distinctions urged by learned counsel to exist between a number of the decisions cited in this opinion, and between some of them and others cited in their brief. Enough has been adduced to show what we conceive to be the plain trend of decision of the Court of Appeals, and also why we regard those decisions as controlling in the present case.

The judgment of the court below is reversed, with direction that the order of the referee be affirmed, with costs.