**In re Rick E. LYNCH, Debtor.**

**Bankruptcy No. 93–50442.**

United States Bankruptcy Court, E.D. Kentucky.

Aug. 22, 1995.

Barbara McDonald Griffin, Lexington, KY, for debtor.

Scott Rickman, Morgan & Pottinger, Lexington, KY, for creditors.

## MEMORANDUM OPINION

JOE LEE, Chief Judge.

On motion of the debtor, by counsel, this case was reopened to permit the debtor to file and the court to consider a motion pursuant to 11 U.S.C. § 522(f)(1) to avoid judicial liens as liens that impair the debtor's homestead exemption in real property described as 3800 Windingbrook Court, Lexington, Fayette County, Kentucky. There is no dispute about the fact the property is the debtor's residence or that the debtor claimed and was allowed an exemption in the property to the extent of $5,000 under KRS 427.060 during the course of his chapter 7 bankruptcy proceeding.

## FINDINGS OF FACT:

The debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on March 17, 1993. On April 30, 1993, the trustee filed a notice of no distribution and a notice of abandonment of interest in property of the estate, including the real estate in question. The debtor was granted a discharge on September 15, 1993, and the case was closed on October 6, 1993.

There is no dispute about the right of the debtor to reopen the case pursuant to 11 U.S.C. § 350(b) and Rule 5010, Federal Rules of Bankruptcy Procedure, to accord relief to the debtor.

The motion of the debtor seeks an order avoiding the following judicial liens.

1. Judgment lien of National City Bank, as successor in interest to Commerce National Bank, based on a judgment obtained September 18, 1990 in the amount of $1,758.73 plus costs and attorney fees against Rick E. Lynch and Connie Lynch in Fayette District Court in action no. 90–C–2555. Notice dated July 13, 1992 of the

judgment which operates as a lien appears of record in Encumbrance Book 138, page 699 in the Fayette County Clerk's Office.[1]

2. Judgment lien of Oakland Furniture Manufacturers, Inc. against Lester T. Clarkson d/b/a Value Rentals, a partnership, based on a judgment obtained on April 26, 1991 in the amount of $2,168.00 in the Fayette District Court in action no. 92–C–1043. Notice dated December 2, 1992 of the judgment which operates as a lien appears of record in Encumbrance Book 142, page 516 in the Fayette County Clerk's Office. It is not entirely clear that this lien actually encumbers the debtor's interest in real estate, although it appears the debtor was a partner with Clarkson in a business known as Value Rentals.

3. Judgment lien of Philip M. Bell Co. based on a judgment obtained November 11, 1992 against Value Rentals, et al., including the debtor, in the amount of $1,894.60 in action no. 92–C–2580 in the Fayette District Court. Notice dated February 9, 1993 of the judgment which operates as a lien appears of record in Encumbrance Book 144, page 393 in the Fayette County Clerk's Office.

Only one of the judgment lien creditors, National City Bank, as successor in interest to Commerce National Bank, has objected to the relief requested by the debtor. The objection states the debtor's homestead exemption in his residence is not presently impaired by the bank's lien because the debtor's residence is not now subject to foreclosure or involuntary execution proceedings. The objecting creditor is relying on the decision of the Court of Appeals for this circuit in *In re Moreland,* 21 F.3d 102 (6th Cir.1994).

The parties have stipulated certain facts. On the date of bankruptcy the value of the debtor's residence was $62,000. The property was subject to two consensual liens, a first mortgage in the amount of $59,900 in favor of Standard Federal,[2] and a second mortgage in

---

1. This judgment is against the debtor and his wife who has not sought relief in bankruptcy. Avoidance of this lien on the husband's interest in their residence will not affect the validity of the lien on the wife's interest in the property.

2. This mortgage, dated November 20, 1987, in the original principal amount of $61,164.00, of record in Mortgage Book 1459, page 85 in the Fayette County Clerk's office, was initially held by First Security Mortgage Company and was

the amount of $24,192.00 in favor of Money One Credit Corporation. Money One has filed a proof of claim indicating that the payoff balance on its mortgage on the date of bankruptcy was $14,338.29. The indebtedness to Money One is further secured by a security interest in a 1990 Toyota Camry purchased by the debtor and his wife on March 13, 1992. The mortgage of Money One was recorded on March 30, 1992, in Mortgage Book 1736, page 194 in the Fayette County Clerk's office.

The second mortgage indebtedness of Money One on the debtor's residence appears to be inferior to state tax liens, notices of which were filed on or about February 26, 1992 in Encumbrance Book 135, at pages 127, 128 and 129 against the debtor Ricky E. Lynch as a partner in Value Rentals, Lester P. Clarkson as a partner in Value Rentals, and Value Rentals. The debtor and Clarkson were partners in a business known as Value Rentals at 2350 Woodhill Drive, Suite 8B, Lexington, Kentucky. The amount of the tax lien does not appear in the notices. According to the schedules to the debtor's petition the amount of the tax lien was $3,500. It appears from the record that these liens were released on May 12, 1995, but were liens on the debtor's residence on the date of bankruptcy.

There was another tax lien against the residence when bankruptcy intervened. This lien was filed March 10, 1993 in Encumbrance Book 145, page 214 in the Fayette County Clerk's office, the amount of which, based on the stipulation of the parties, appears to have been approximately $600. This lien is inferior to the judgment liens which the debtor seeks to avoid.[3]

It seems clear that on the date of bankruptcy the debtor's interest in the real property which he and his wife occupied as a residence was less than the $5,000 homestead exemption which he claimed and was allowed therein during the administration of his bankruptcy case. The property, valued at $62,000, was subject to a first mortgage lien of $59,900, a tax lien of $3,500, and a second mortgage lien of $14,338.29.

It is also clear that the judicial liens which the debtor seeks to avoid operate as a cloud on the debtor's legal title to the property and impair the ability of the debtor to transfer his interest in the property free of the judicial liens. *See Matter of Henderson,* 18 F.3d 1305, 1309 (5th Cir.1994).

## CONCLUSIONS OF LAW:

■ Kentucky, like Ohio, is among the 36 "opt out" states that have made the exemptions provided by 11 U.S.C. § 522(d) unavailable to resident individual debtors seeking relief under the Bankruptcy Code. KRS 427.170.

The applicable Kentucky homestead exemption statute provides:

427.060 Homestead and burial plot exemptions; exceptions

In addition to any exemption of personal property, an individual debtor's aggregate interest, not to exceed $5,000 in value, in real or personal property that such debtor or a dependent of such debtor uses as a permanent residence in this state, or in a burial plot for such debtor or a dependent of such debtor is exempt from sale under execution, attachment or judgment, except to foreclose a mortgage given by the owner of a homestead or for purchase money due thereon. This exemption shall not apply if the debt or liability existed prior to the purchase of the property or the erection of the improvements thereon.

KRS 427.060.

This Kentucky statute has not been interpreted, as the Ohio exemption statute has been misinterpreted (much more about this

---

apparently assigned to Merrill Lynch Credit Corporation and subsequently to Standard Federal. The debtor and his wife apparently assumed this mortgage when they purchased the residence on August 10, 1990 as evidenced by a deed of record in Deed Book 1556, page 227 in the Fayette County Clerk's office. The debtor and his spouse hold title to the property as joint tenants with the right of survivorship.

**3.** A state tax lien for a similar amount was filed April 30, 1993 in Encumbrance Book 146, page 331, in the Fayette County Clerk's office. This lien was filed after the commencement of the bankruptcy case.

later), to postpone a debtor's right to a homestead exemption until the property in which the debtor is entitled to the exemption is threatened with sale pursuant to an execution, attachment, or foreclosure of a judgment lien. District Judge Shackelford Miller, who later served on the Sixth Circuit Court of Appeals,[4] pointed out in *In re Grisanti*, 58 F.Supp. 646 (W.D.Ky.1945), that under Kentucky law the right of an individual debtor to a homestead exemption vests on the acquisition of property and may be claimed at any time thereafter by an individual debtor who qualifies for the exemption. *First National Bank of Jackson v. Oliver*, 286 Ky. 286, 150 S.W.2d 894 (Ky.1941).

■ The Kentucky statute here involved exempts homestead property from levy *and* sale under execution. *Foreman v. Cook*, 277 Ky. 812, 127 S.W.2d 856, 858 (1939).[5] This interpretation of the statute mandates that the exemption is available to a debtor upon the commencement of a bankruptcy case under the long established rule enunciated by the Supreme Court of the United States in *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924).

■ On the basis of Judge Miller's decision in the *Grisanti* case, 58 F.Supp. 646, the decision of the Kentucky Court of Appeals in the *Oliver* case, 150 S.W.2d 894, and other relevant authorities, my colleague Judge Howard concluded that the courts of this state have clearly recognized the right of a debtor to assert a homestead exemption in the absence of a forced sale. *In re Powell*, 173 B.R. 338 (Bankr.E.D.Ky.1994).

I agree. To hold otherwise would be contrary to a long established rule in this circuit and to the decision of the Supreme Court of the United States in *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301.

Long ago the court of appeals for this circuit adopted the general rule that in a bankruptcy case the right of an individual debtor to an exemption provided by applicable state law is to be determined by the interpretation placed on the statute by the courts of the state. *In re Baker*, 182 F. 392 (6th Cir.1910). The court has, on a number of occasions reiterated this rule. *Arbogast v. Gottfried*, 58 F.2d 156 (6th Cir.1932); *Burns v. Kinzer*, 161 F.2d 806 (6th Cir.1947). The same rule has been adopted by other circuits. *See* 1A *Collier on Bankruptcy* § 6.03 (14th ed. 1974).

Unfortunately, the court of appeals did not adhere to this salutary rule in its decisions in *In re Dixon*, 885 F.2d 327 (6th Cir.1989), and *In re Moreland*, 21 F.3d 102 (6th Cir.1994). The court was mislead by a decision of the United States District Court for the Northern District of Ohio in *In re Peck*, 55 B.R. 752 (N.D.Ohio 1985), in which the district judge, as had the district judge in the *Baker* case, engaged in his own interpretation of the meaning of a state homestead exemption statute. The district judge cited no state law authority to support his view that the language of the Ohio statute protects homestead property only from sale.

He failed to note that, unlike the former statute, with which he probably was very familiar and which did indeed protect homestead property only from sale, the present statute protects all property exempt thereunder, including homestead property, from both levy and sale. Clearly, the present statute is in the disjunctive. It exempts property covered by the statute from execution *or* garnishment *or* attachment *or* sale to satisfy a judgment or order. Thus, the statute meets the test laid down in *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301, of a statute that provides a property exemption to a debtor as of the commencement of a bankruptcy case.

There is no present basis for distinction between the Kentucky and Ohio exemption statutes in this respect. The United States District Court for the Northern District of

---

**4.** Judge Miller served as a district judge for the Western District of Kentucky from 1939 until he was sworn in as a judge of the Court of Appeals for the Sixth Circuit on December 21, 1945. He retired on November 1, 1965.

**5.** Section 1702 of Baldwin's Revision of Carroll's Kentucky Statutes referred to in this opinion is now codified as KRS 427.060. See Kentucky Revised Statutes Comparative Section Table indicating disposition of sections of 1936 edition of Carroll's Statutes.

Ohio erred in its interpretation of the Ohio exemption statute in *In re Peck,* 55 B.R. 752 (N.D.Ohio 1985). Apparently the court was not made cognizant of the decision in the *Stump* case, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301, or of earlier decisions of the United States District Court for the Northern District of Ohio, hereinafter cited, which dictate the conclusion that the $5,000 monetary exemption in real or personal property used as a residence provided by section 2329.66(A)(1)(b) of the Ohio Revised Code is a present monetary exemption available to a debtor upon the commencement of a bankruptcy case.

This court is convinced, by virtue of a 1992 amendment to section 2329.66 of the Ohio Revised Code, it is now clear that a recorded notice of a judgment, which under section 2329.02 of the Ohio Revised Code causes a judgment to operate as a lien on a debtor's interest in real estate, is an "attachment" within the meaning of that term as used in the Ohio exemption statute. Ohio Rev.Code § 2329.66. *See* H.B. 478, Ohio Revised Code: 1992 Legislation, Exhibit No. 1 to this opinion. Moreover, if the attention of the court in *In re Moreland,* 21 F.3d 102 (6th Cir. 1994), and its predecessor *In re Dixon,* 885 F.2d 327 (6th Cir.1989), both decided in reliance on *In re Peck,* 55 B.R. 752 (N.D.Ohio 1985), had been directed to an earlier evolutionary change in the Ohio exemption statutes, particularly the former homestead exemption statute, that resulted from the enactment by the Ohio legislature of Amended Substitute Bill No. 674, perhaps the result in those cases would have been different. Amended Substitute House Bill No. 674 took effect September 28, 1979, two days prior to the October 1, 1979 effective date of the Bankruptcy Reform Act of 1978. The bill represented the good faith effort of the Ohio legislature to conform the exemption laws of that state to the exemption provisions of the new Bankruptcy Code. Ohio Rev.Code: 1979 Legislation, pages 361–363, Exhibit No. 2 to this opinion.

Prior to September 28, 1979, the Ohio statutory provisions exempting property from execution, attachment, and other process appeared in Ohio Revised Code sections 2329.62 through 2329.83. These statutes provided for exemption of specific items and kinds of personal property, a homestead exemption, and an exemption in lieu of homestead. Nadler, *Exemptions,* 16 Ohio St.L.J. 63 (1955).

Prior to September 28, 1979, the Ohio exemption statutes which are most material, including section 2329.66, a statute of ancient lineage which originally provided an exemption only for personal property, were as follows:

§ 2329.66. Every person who is the chief support of a family, or who is a person paying alimony, maintenance, or other allowance for the support of a divorced or separated spouse, or for the support of a minor child, or is the chief support of any dependent person, and every widow *may hold property exempt from execution, attachment, or sale, for debt, damage, fine, or amercement, as follows:*

(A) ... wearing apparel ...

(B) ... household furnishings ...

(C) ... books ... and ... family pictures ...

(D) Provisions ...

(E) ... tools and implements ... necessary for carrying on ... profession or trade ...

(F) ... articles ... for show or exhibition for money or pecuniary gain ...

(G) ... personal earnings ...

Ohio Rev.Code § 2329.66: 1977 Legislation (emphasis supplied). See Exhibit No. 3 to this opinion.[6]

§ 2329.73 Who is entitled to exemption. Husband and wife living together, a widow or widower living with an unmarried daughter or unmarried minor son, *may hold exempt from sale, on judgment or order, a family homestead* not exceeding one thousand dollars in value ...

---

**6.** The fact that subdivision (G) of this statute exempted seventy-five percent of the disposable earnings of a debtor from execution, attachment or sale for debt illustrates that this statute provided an up front, absolute exemption. Otherwise, as we shall see later, the statute would violate federal law.

Ohio Rev.Code § 2329.73 (emphasis supplied).

> § 2329.81 Property exempt from levy. Husband and wife living together ... and not the owner of a homestead, in lieu thereof, *may hold exempt from levy and sale, real or personal property* to be selected by such person or his attorney, before sale, not exceeding five hundred dollars in value, *in addition to the amount of chattel property otherwise by law exempted.* Such selection and exemption shall not be made by the debtor, or his attorney, or allowed to him from money, salary or wages due to him from any person, partnership or corporation, nor shall any passenger automobile be selected as exempt. No personal property shall be exempt from execution on a judgment rendered for the purchase price or any part thereof.

Ohio Rev.Code § 2329.81 (emphasis supplied).

Ohio case law recognized a distinction between the language of section 2329.73 which merely permitted a debtor to hold a family homestead exempt "from sale, on judgment or order" and that of section 2329.81 authorizing a debtor to hold real or personal property selected in lieu of homestead exempt "from levy and sale." According to the case law, the homestead exemption was a qualified exemption that protected property from sale only so long as it was used as a homestead, whereas the exemption which the law gave in lieu of homestead was an absolute exemption. With respect to the latter exemption, the debtor acquired absolute ownership with full power of disposition of property selected in lieu of homestead. *Genell v. Hirons,* 70 Ohio St. 309, 71 N.E. 709 (Ohio 1904); *McComb v. Thompson,* 42 Ohio St. 139 (Ohio 1884).

The Honorable Carl D. Friebolin,[7] who served as a Referee in Bankruptcy for the Northern District of Ohio from 1916 to 1967, during which time he also taught at Case Western Reserve Law School and authored many articles on bankruptcy matters, explained as follows the difference under the Ohio statutes between the homestead exemption and other exemptions of property provided by law.

It is the nature of a homestead exemption, as distinguished from other kinds of exemptions as provided in the Ohio statutes, that is the primary cause of the uncertainty in procedure in disposing of the former exemption. In the case of other property—that is, other than homestead property—which may be claimed as exempt by the debtor, such property, when set apart as exempt, is retained by the debtor free of any charge or condition. It is his to dispose of as he wishes. But when homestead property is levied upon and a homestead is set aside as exempt, the lien of the judgment creditor remains thereon. All that the debtor receives and retains, in addition to title, is the right to occupy it as a homestead.

This distinction is based upon the different language of the respective statutes. In the case of other exemptions, for example the exemptions granted to the chief supporter of a family, certain personal property of a definite nature may be claimed as exempt from *execution, attachment or sale.* Where a debtor, or his spouse, owns no homestead, he may claim as exempt from *execution, attachment or sale* any kind of property, real or personal, of the value of five hundred dollars.

But where a homestead exemption is provided, it is declared to be exempt only from *sale*—not also from *execution* or *attachment.* Thus in the usual case of a levy of execution by a judgment creditor upon property of a debtor which the latter occupies in whole or in part as a homestead, the debtor, as long as he owns and occupies it as a homestead, holds the legal title and also, in effect, enjoys a stay of sale so long as he owns the property and occupies it as a homestead. If the debtor sells the property (subject of course to the judgment creditor's lien), or ceases to occupy it as a homestead, the "stay" is lifted and the judgment creditor may proceed to foreclose his lien. Since neither he nor his

---

7. Judge Friebolin entered the practice of law in 1899, a year after the enactment of the Bankruptcy Act of 1898. He served in the Ohio legislature and as a judge of the Common Pleas Court before his appointment as a Referee in Bankruptcy in 1916.

family will live forever, the judgment creditor, his heirs or assigns, will eventually realize upon the judgment lien.

Friebolin, *Peculiar Nature of Homestead Exemptions: Their Disposition in Bankruptcy,* 23 J.Nat'l Ass'n Ref.Bankr. 106, 107 (July 1949); see in particular footnotes 9, 10, 11. This article is a reprint of the same article appearing in 18 U.Cin.L.Rev. 146 (Mar. 1949).

It was understood by the bankruptcy judges who administered the law that the exemptions provided by section 2329.66 and section 2329.81 which respectively exempted property from "execution, attachment, or sale" and from "levy and sale" were absolute exemptions available upon the commencement of a bankruptcy case to a debtor who qualified for such exemptions and who claimed such exemptions in the schedules to a petition in bankruptcy. *In re Temple,* 20 F.Supp. 593 (S.D.Ohio 1936); *In re Henry,* Am.Bankr.Rep. 362 (N.D.Ohio 1905) (Opinion by Doyle, Referee); *Matter of McClintock,* 13 Am.Bankr.Rep. 606 (N.D.Ohio 1904) (Opinion by McCarty, Referee); *In re Groves,* 6 Am.Bankr.Rep. 728 (N.D.Ohio 1901) (Opinion by Remington, Referee). The rule of law enunciated in these cases and affirmed by the U.S. District Court for the Northern District of Ohio was that while the state statutes controlled the amount and kind of exemptions and the parties entitled thereto, the Bankruptcy Act itself controlled the time and manner of claiming and allowing exemptions.

A number of bankruptcy cases decided by the U.S. District Court for the Northern District of Ohio recognized that exemptions in lieu of homestead should be set off and received by a debtor at the outset of a bankruptcy case in the form of personal property. *In re Crum,* 221 F. 729, 34 Am.Bankr.Rep. 58 (N.D.Ohio 1913); *In re Stern,* 208 F. 488, 30 Am.Bankr.Rep. 694 (N.D.Ohio 1913); *In re Berman,* 140 F. 761, 15 Am.Bankr.Rep. 463 (N.D.Ohio 1905). Moreover, it was apparently the practice in Ohio in the administration of bankruptcy cases to sell homestead property encumbered by judicial liens and to pay the debtor $500 from the proceeds of sale. *In re Crum,* 221 F. at 734. In that manner judicial liens on homestead property were avoided to a certain extent under prior law.

Section 6 of the Bankruptcy Act, which remained in effect until October 1, 1979, provided that the Act did not affect the allowance to bankrupts of the exemptions which were prescribed by the laws of the United States or by the state laws in force at the time of the filing of the petition in the state wherein bankrupts had maintained their domicile for the six months immediately preceding the filing of the petition, or for a longer portion of such six months than in any other state. (11 U.S.C. § 24). The statute was silent on the matter of whether an exemption should be determined as of the date of bankruptcy or as of an earlier or later date. The Supreme Court resolved this issue in *White v. Stump,* 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924).

The Bankruptcy Law does not directly grant or define any exemptions, but directs, in section 6 (Comp.St. § 9590), that the bankrupt be allowed the exemptions 'prescribed by the state laws in force at the time of the filing of the petition'; in other words, it makes the state laws existing when the petition is filed the measure of the right to exemptions. It further provides that a voluntary bankrupt shall claim the exemptions to which he is entitled in a schedule filed 'with the petition,' and an involuntary bankrupt shall claim his in a schedule filed within 10 days after the adjudication, unless further time be granted (section 7, cl. 8 [Comp.St. § 9591]); that the trustee shall set apart the exempt property and report the same to the court as soon as practicable after his appointment (section 47a, cl. 11 [Comp.St. § 9631]); that the trustee shall be vested by operation of law with the title of the bankrupt to all property, insofar as it is not exempt, which 'prior to the filing of the petition' he could by any means have transferred or which might have been levied upon and sold under judicial process (section 70a [Comp.St. § 9654]); and that the bankrupt shall be given a discharge releasing him from debts owing 'at the

time of the filing of the petition,' (sections 17 and 63 [Comp.St. §§ 9601, 9647] ).

These and other provisions of the Bankruptcy Law show that the point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed. This has been recognized in our decisions. Thus we have said that the law discloses a purpose 'to fix the line of cleavage' with special regard to the conditions existing when the petition is filed (*Everett v. Judson,* 228 U.S. 474, 479, 32 [33] S.Ct. 568 [569], 57 L.Ed. 927, 46 L.R.A. [N.S.] 154 [(1913)] ), and that 'it is then that the bankruptcy proceeding is initiated, that the hands of the bankrupt and of his creditors are stayed and that his estate passes actually or potentially into the control of the bankruptcy court.' (*Bailey v. Baker Ice Machine Co.,* 239 U.S. 268, 275, 36 S.Ct. 50, 54, 60 L.Ed. 275 [(1915)]; *Acme Harvester Co. v. Beekman Lumber Co.,* 222 U.S. 300, 307, 32 S.Ct. 96 [99], 56 L.Ed. 208 [(1911)] ). When the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed. The provisions before cited show—some expressly and others impliedly—that one common point of time is intended and that it is the date of the filing of the petition. The bankrupt's right to control and dispose of the estate terminates as of that time, save only as to 'property which is exempt.' Section 70a. The exception, as its words and the context show, is not of property which would or might be exempt if some condition not performed were performed, but of property to which there is under the state law a present right of exemption—*one which withdraws the property from levy and sale under judicial process.* (Emphasis supplied).

266 U.S. at 312–313, 45 S.Ct. at 103–104.

This rule of law is codified by the Bankruptcy Code. Under 11 U.S.C. § 541(a) all of the legal or equitable interests of the debtor in property become property of the estate as of the commencement of the case. Under section 522(b)(2)(A) an individual debtor may exempt from property of the estate such property as is exempt under state or local law that is applicable on the date of the filing of the petition at the place in which the debtor maintains his or her domicile. The Supreme Court has stated that under section 522(b) exempt property is determined "on the date of the filing of the petition." *Owen v. Owen,* 500 U.S. 305, 314 n. 6, 111 S.Ct. 1833, 1838 n. 6, 114 L.Ed.2d 350 (1991). Thus, the rule is the same under present law as it was under prior law as declared by *White v. Stump.* Moreover, this circuit has recognized that a debtor's right to a homestead exemption under Ohio law is determined as of the date of bankruptcy. *In re Stitt,* 252 F. 1 (6th Cir.1918).

In revising state exemption laws pursuant to Amended Substitute House Bill No. 674 to conform to the requirements of the new Bankruptcy Code, the Ohio legislature chose section 2329.66 of the Ohio Revised Code, a section previously devoted solely to personal property exemptions (see Exhibit No. 3 to this opinion), as the vehicle for prescribing exemptions generally, including the former homestead exemption and the former exemption in lieu of homestead, thereby eliminating the previous disparity in the timing of personal property exemptions and the former homestead exemption. The former Ohio homestead exemption was converted from a mere right of occupancy to an absolute monetary exemption on a parity with all other exemptions provided by state law. See Exhibit No. 2 to this opinion.

The old Ohio statute, pursuant to which the homestead exemption was a qualified exemption in that it was a mere right of occupancy so long as the property was used as a homestead, was repealed in 1979. See Sec. 2 of Amended Substitute House Bill No. 674, Ohio Revised Code: 1979 Legislation, p. 364; Exhibits No. 2 and 4 to this opinion.

The introductory language of section 2329.66 states that every person domiciled in Ohio may hold property exempt from "execution, garnishment, attachment, or sale, to

satisfy a judgment or order, as follows." The statute then proceeds to catalog and place a monetary limit on a variety of exemptions of a person's "interest" in real or personal property used as a residence, a motor vehicle, wearing apparel, cash (on hand, receivable or on deposit), household furnishings, jewelry, an exemption in the nature of an exemption in lieu of homestead, implements, professional books and tools of trade, insurance benefits, professionally prescribed or medically necessary health aids, a burial plot, maintenance payments, worker's compensation, unemployment compensation benefits, aid to dependent children payments, general assistance, the person's right to a pension benefit, annuity, or retirement allowance, or to accumulated contributions, the person's right to benefits from policemen and firemen's death benefit fund, the person's right to receive a payment under any pension, annuity, or similar contract to the extent necessary for the support of the person or his dependents, the person's right to receive spousal or child support, an allowance or maintenance to the extent reasonably necessary for the support of the person and any of his dependents, the person's right to receive an award of reparations, a payment on account of wrongful death to the extent reasonably necessary for the support of the person and any of his dependents, a payment on account of personal injury, or in compensation for loss of future earnings, to the extent reasonably necessary for support of the debtor and any of his dependents, personal earnings, specific partnership property, the seal of a notary, property exempt from execution, attachment, garnishment, or sale by federal statutes other than the Bankruptcy Code, and finally a "wild card" exemption for debtors seeking relief under the Bankruptcy Code.

The point to be made by this detailed recitation of exemptions provided by section 2329.66 is that if the introductory language to this section of the Ohio Revised Code exempting property from "execution, garnishment, attachment, or sale to satisfy a judgment or order" is interpreted to postpone in bankruptcy cases the exemption of real or personal property used as a residence until such property is subsequently threatened with involuntary sale under an attachment, then the same language must similarly postpone in bankruptcy cases all other exemptions enumerated in this statutory provision as well, for example, the exemption for a wheelchair, aid to dependent children and child support payments, wages, etc. Such a construction of the statute is contrary to prior Ohio case law, to other provisions of the statute, and to federal law.

The statute is structured in a manner that withdraws from levy and sale numerous categories of property. Thus, to infer that the legislature intended to qualify the exemption with respect to real or personal property used as a residence, that is to protect such property only from sale, while protecting all other categories of property from both levy and sale, is implausible. *Matter of Hunter*, 970 F.2d 299, 306–307 (7th Cir.1992).

Section 2329.66 of the Ohio Revised Code recently was amended to exempt from execution, garnishment, attachment or sale a debtor's entire interest, without limitation as to amount, in one parcel or item of real or personal property that the debtor or a dependent of a debtor uses as a residence, from a judgment or order for money owed for health care services rendered or health care supplies provided to the debtor. Ohio Rev. Code § 2329.66. Exhibit No. 1 to this opinion. The statute provides that the debtor's interest in such property in excess of $5,000 may remain encumbered by a judgment lien for health care services or supplies until the property is sold or otherwise transferred by the debtor, but that the debtor's interest in the property up to $5,000 is exempt from such a judgment lien. The statute as amended provides strong evidence that it was the intention of the Ohio legislature initially to exempt a debtor's interest, not to exceed $5,000, in real or personal property used as a residence, from a judgment lien, logically indicating that a judgment lien is subsumed in the words execution, garnishment and attachment as used in the statute. Ohio Rev. Code § 2329.66. Exhibit No. 1 to this opinion.

The Ohio exemption of a person's interest, not to exceed $5,000, in one parcel or item of

real or personal property that the person or a dependent of the person uses as a residence is no longer a homestead exemption in the traditional sense as defined in *Black's Law Dictionary* as a dwelling house and the adjoining land where the head of the family dwells. The exemption is not restricted to the head of a family, nor is it tied in all instances to the ownership of land. A mobile home located on a rented lot in a trailer park or on a relative's land, a recreational vehicle or an old school bus used as a residence, a houseboat plying a stream or moored to a river bank or to a dock on Lake Erie, a gypsy's covered wagon, and a nomad's tent are all within the scope of this exemption. Thus, it made sense, when the Ohio homestead exemption statute which defined the homestead exemption as a right of occupancy was repealed, to insert this monetary exemption in real or personal property used as a residence into the section of the Ohio Code dealing with exemption of property in general.

Without question, as indicated by earlier citations of authority in this opinion, prior to September 28, 1979, the language of section 2329.66 had been interpreted as providing an absolute exemption of property exempted under the section. Every person who was the chief support of a family was permitted to hold wearing apparel, household furnishings, books and family pictures, tools of trade, articles intended for show or exhibition for money, and personal earnings "exempt from execution, attachment, or sale, for debt." These exemptions were routinely allowed to individual debtors at the commencement of a bankruptcy case.

The Ohio legislature must have taken prior practice, federal case law, and the Bankruptcy Code into account in providing in division (C) of section 2329.66 that in bankruptcy proceedings the "interest" of the debtor in property exempt under the section shall be determined as of the date a bankruptcy petition is filed with the bankruptcy court and in all other cases the "interest" of the debtor in exempt property shall be determined as of the date of an appraisal, if necessary, or the issuance of a writ of execution.

The language of section 2329.66(C) fixing the date for determining the "interest" of a debtor in exempt property in both bankruptcy and nonbankruptcy proceedings probably was adopted in recognition of the fact there is no temporal distinction between the date of bankruptcy and the date of the issuance of a writ of execution. This is because on the date of bankruptcy a debtor's interest in property is immediately subjected to a writ of execution that arises by operation of law in favor of the trustee for the collective benefit of all creditors. 11 U.S.C. § 544(a). The debtor must claim and obtain an exemption of the debtor's interest in property from property of the estate to prevent sale of the property by the trustee in satisfaction of the execution the trustee holds on property of the estate. 11 U.S.C. § 363(b).

The court of appeals for this circuit has on several occasions recognized the status of the trustee as an execution creditor or judicial lienholder as of the date of the commencement of a bankruptcy case. *In re Lesser–Ely Cotton Co. (Interstate Banking & Trust Co. v. Brown )*, 235 F. 32 (6th Cir.1916); *In re Toms (Tuttle v. Smith )*, 101 F.2d 617 (6th Cir.1939); *In re Kurtz Roofing Co. (U.S. v. Speers )*, 335 F.2d 311 (6th Cir.1964), *aff'd*, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965). In the latter case both the Court of Appeals for this circuit and the Supreme Court of the United States rejected the argument that there is a distinction between the hypothetical judgment lien of the trustee and the lien of an actual judgment creditor.

Also, unlike judgments filed or recorded under state law, which ordinarily encumber the debtor's interest only in real property, the judicial lien of the trustee encumbers the debtor's interest in all property, both real and personal, including real or personal property used as a residence. 11 U.S.C. § 544(a)(1). When the debtor's interest in real or personal property used as a residence is exempt from the estate to the extent of the value specified by state law, such interest is thereby freed from the trustee's judicial lien. The judicial liens of creditors affixed to property of the debtor when it becomes property of the estate may be avoidable at the request of the trustee or the debtor.

It is clear that prior to October 1, 1979, the effective date of the new Bankruptcy Code, cases decided by the federal district court sitting in the Northern District of Ohio recognized the filing of a voluntary petition in bankruptcy as an event that triggered a debtor's entitlement to real and personal property exemptions provided by the Ohio Revised Code. *In re Hewit,* 244 F. 245 (N.D.Ohio 1917). In his opinion in the *Hewit* case District Judge Westenhaver[8] compared a bankruptcy proceeding to an assignment for the benefit of creditors and noted that in the latter type of proceeding the Supreme Court of Ohio had consistently protected a debtor's right to exemptions. After noting the well-recognized rule in effect in the Northern District of Ohio that both the time and manner of claiming exemptions in a bankruptcy case were controlled by the Bankruptcy Act and not by state law, Judge Westenhaver wrote:

> The procedure in the bankruptcy courts is flexible enough to permit the liquidation of a bankrupt estate so as to preserve and protect all the bankrupt's rights of personal and homestead exemptions and of allowances in lieu thereof. If it were not, then the debtor's exemptions given by state law and admittedly preserved by the Bankruptcy Act would be destroyed.

*Hewit,* 244 F. at 249–50. Judge Westenhaver was of the view that carving out a homestead for a debtor in real property that was overencumbered by liens was tantamount to denying the debtor a homestead exemption. *In re Radcliffe,* 243 F. 716 (N.D.Ohio 1917). This view was approved by the court of appeals. *In re Stitt,* 252 F. 1 (6th Cir.1918).

Those familiar with the history of the Bankruptcy Reform Act of 1978 will recall that the bill passed by the House gave the debtor the option of choosing the exemptions provided by subsection (d) of 11 U.S.C. § 522 or the exemptions provided by state or local law, and federal law other than subsection (d). H.R. 8200, 95th Cong., 1st Sess. (1977); *see* H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, *reprinted in* 9 Bankr.Serv.

(L.Ed.) § 82.4 and 3 App. *Collier on Bankruptcy* (15th ed. 1979). The bill passed by the Senate differed in that it retained the rule of law that exemptions would be determined by reference to federal, state, or local law applicable on the date of the filing of the petition at the place of the debtor's domicile. S. 2266, 95th Cong., 2d Sess. (1977–78); *see* S.Rep. No. 989, 95th Cong., 2d Sess. 75–76 (1978), *reprinted in* 9 Bankr.Serv. (L.Ed.) § 87.3 (1979) and 3 App. *Collier on Bankruptcy* (15th ed. 1979). At conference, it was agreed that exemptions as provided in the House bill would become law subject to the right of the states to opt out and restrict debtors to the exemptions provided by federal, state, or local law rather than the exemptions provided by subsection (d) of section 522. In states such as Kentucky and Ohio that have precluded application of the exemptions provided by section 522(d), prior state and federal case law interpreting state exemption statutes is informative in interpreting present law. Thus Judge Westenhaver's comparison of a bankruptcy proceeding to an assignment for the benefit of creditors remains instructive.

An Ohio statute provides that a debtor making an assignment for the benefit of creditors is entitled to the exemptions provided by other Ohio statutes. Ohio Rev.Code § 1313.17. This statute is similar to and serves the same function as section 522(b)(2)(A) of the Bankruptcy Code which entitles an individual seeking relief under the Bankruptcy Code to the exemptions provided by state law. Under Ohio law an assignment for the benefit of creditors does not transfer exempt property to the assignee. The procedure for allowing exemptions following an assignment appears to be similar in many respects to the procedure for setting apart exemptions under the former Bankruptcy Act. There is no requirement of an execution, garnishment, attachment or threatened sale to trigger the right to exemptions in an assignment proceeding. *In re Kraus,* 79 Ohio St. 314, 87 N.E. 176 (Ohio 1909). Nor was there any such requirement under prior law as a condition to a debtor's entitlement to exemptions in a bankruptcy case. The ex-

8. Judge Westenhaver served as a district judge in the Northern District of Ohio from 1917 to 1923.

emptions to which a debtor was entitled under section 2329.66 were set aside to the debtor routinely. The controversies, if any, were over the debtor's right to retain a particular item of personal property such as a diamond ring, a watch, or an automobile as exempt. Once title to property is vested in the assignee, creditors cannot levy on the property, nor can they levy on property that has been set aside to a debtor as exempt. Another Ohio statute provides that an officer to whom an attachment is issued may not be required to levy on exempt property. Ohio Rev.Code § 2715.05. If an officer cannot be required to levy on exempt property, a rule of law that property is exempt only if it is improperly levied on seems anomalous.

The Bankruptcy Code protects exempt property from levy or sale in much the same manner as the Ohio statutes.

■ Upon the filing of a voluntary petition for relief under the Bankruptcy Code a debtor's property passes by operation of law to the bankruptcy estate. Creditors are stayed from enforcement of their claims against the debtor and against property of the estate. 11 U.S.C. § 362(a). With respect to claims against an individual debtor the stay continues in effect until a discharge is granted. 11 U.S.C. § 362(c)(2)(C). Upon the entry of the discharge creditors holding unsecured claims are permanently enjoined from attempting to collect their claims as personal obligations of the debtor or from property acquired by the debtor after bankruptcy. 11 U.S.C. § 524(a)(1), (2) and (3). With certain exceptions, property exempted under section 522(b) is not liable during or after a bankruptcy case for any debt that arose before the commencement of the case, unless the debt is secured by a lien that is not avoided by the debtor under section 522(f) or (g) or by the trustee under other applicable provisions of the Bankruptcy Code. 11 U.S.C. § 522(c)(2). Prepetition obligations owing to creditors holding unsecured claims are discharged as of the date of the commencement of the case. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Obviously, property set apart to the debtor as exempt is exempt as of the date of the commencement of the case

from the claims of creditors whose claims are extinguished by the discharge in bankruptcy. Such creditors can no longer pursue their claims by reducing them to judgment or by having an execution, garnishment or attachment issued on a judgment. Any existing judgment not secured by a lien is voided by the discharge.

■ With respect to creditors holding claims secured by a lien, their only remedy is an in rem proceeding against property to which the lien is affixed. Any such creditor must hold a nonavoidable consensual, statutory, or judicial lien that affixed to property before the commencement of the case. A creditor cannot acquire a lien by causing an execution, garnishment, or attachment to issue on a judgment against a discharged debtor after bankruptcy, and there would be no point in a creditor who already has a lien causing such a process to issue. Such creditor's remedy is restricted to foreclosure proceedings against the property encumbered by the lien.

Subsection (c)(2) of section 522 instructs that generally property exempted under section 522(b) is not liable for a prepetition debt, except a debt secured by a lien that is not avoided [past tense] by the debtor under subsection (f) or (g). The language of the statute and Rule 4003(d) of the Federal Rules of Bankruptcy Procedure suggests avoidance of liens under section 522(f)(1) or (2) ordinarily should be requested by the debtor during the course of the bankruptcy proceeding.

Section 502(b)(2) of the Bankruptcy Code, 11 U.S.C. § 502(b)(2), authorizes a creditor to accelerate a claim, to prove the full amount of an indebtedness, including the unmatured portion thereof. Even though only one payment may be due on a note when bankruptcy intervenes and the remaining payments may not become due until well into the future, the creditor is allowed to prove a claim for the entire balance due on the note, plus interest to the date of bankruptcy. This allows a creditor to receive a dividend computed on the full amount of the indebtedness. It also results in the full amount of the indebtedness being subject to discharge in bankruptcy. The amount of a claim is deter-

mined as of the date of bankruptcy. 11 U.S.C. § 502(b)(2)(A). Similarly, by reason of the execution on all the debtor's property that arises in favor of the trustee under 11 U.S.C. § 544(a) upon the filing of the petition, the debtor's right to exemptions under a state law that withdraws property from levy and sale is determined as of the date of bankruptcy. Section 2329.66 of the Ohio Revised Code withdraws from both levy and sale property exempt thereunder and thereby meets the test enunciated by the Supreme Court in *White v. Stump* for granting an exemption in property as of the date of bankruptcy.

■ Congress delegated to the states only the power to identify exempt property, not the power to determine when the exemptions would be effective. In *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the Supreme Court held that 11 U.S.C. § 522(b)(2)(A), which permits a debtor to claim the exemptions provided by applicable state law on the date of the filing of the petition, superseded Florida statutory law pursuant to which, as interpreted by Florida case law, a debtor's entitlement to a homestead exemption in property encumbered by a judicial lien would have been determined as of an earlier date. 500 U.S. at 314 n. 6, 111 S.Ct. at 1838 n. 6.

The language of the Ohio exemption statute here in question does not specifically postpone a debtor's right to exemptions to the occurrence of events subsequent to bankruptcy, nor is there any pre-Code case law so interpreting the statute. To so interpret the statute renders it no less pernicious constitutionally under the Supremacy Clause than the Florida statute that had been interpreted to fix the right to an exemption at a date earlier than the date of the commencement of a bankruptcy case.[9]

It is against this historical, statutory, and caselaw background that the decisions in *Peck, Dixon,* and *Moreland* should be analyzed.

In *In re Peck,* 55 B.R. 752 (N.D.Ohio 1985), the judicial lien of National Deposit Guarantee Corporation, which the debtor sought to avoid under 11 U.S.C. § 522(f)(1), was affixed to the debtor's interest in real property in which the debtor had claimed an exemption of $5,000 under section 2329.66(A)(1) of the Ohio Revised Code. Taking into account liens prior in time and right to National Guarantee's judicial lien, the debtor's interest in the residence did not exceed $5,000. It was to this interest that National Guarantee's lien in the amount of $7,050.59 was affixed. Factually, it appeared National's judicial lien impaired an exemption to which the debtor would have been entitled but for the lien and therefore the lien should have been avoidable under 11 U.S.C. § 522(f)(1). The district court held otherwise.

The court quoted the introductory language of section 2329.66(A) of the Ohio Revised Code, which provides—

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

The court then quotes only the first of the seventeen numbered paragraphs identifying exempt property. This is significant because, as previously noted, the introductory language above quoted applies to all categories of exempt property, including automobiles, household furnishings, wearing apparel, health aides, wages, etc. and not just to—

(1) The person's interest, not to exceed five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence;

Ohio Rev.Code § 2329.66(A)(1). According to the court—

The explicit language of Ohio Rev.Code Ann. § 2329.66(A) makes clear that absent an attachment or other involuntary disposition of property the debtor's exemption is not impaired.[10]

---

**9.** Even if property is withdrawn from levy and sale at some future date, as the Ohio statute is interpreted in the *Dixon* and *Moreland* cases, this is sufficient under the ruling in the *Stump* case to make the exemption available on the date of bankruptcy.

**10.** Perhaps in this context the phrase "the debtor's exemption is not impaired," means the debt-

The court continued—

Therefore, absent a forced sale or other form of execution against the debtor's property, section 522(f) can not be utilized to avoid the judgment liens by appellant National Guarantee. The lien does not impair an exemption to which he [the debtor] would otherwise be entitled under section 522(b).

*In re Peck*, 55 B.R. at 755.

■ The court does not explain why the judicial lien that arose in favor of the trustee upon the commencement of the case, 11 U.S.C. § 544(a), was not an execution or attachment within the meaning of the Ohio statute. Moreover, the court did not explain why the judicial lien of National Guarantee Deposit Corporation, which under section 2329.02 of the Ohio Revised Code operated as an attachment against any interest of the debtor in real property, was not an attachment within the meaning of the Ohio statute, liberally construed.[11]

■ This circuit adheres to the universal rule that exemption statutes are to be liberally construed in favor of the debtor. *Doethlaff v. Penn Mut. Life Ins. Co.*, 117 F.2d 582 (6th Cir.1941); 1A *Collier on Bankruptcy* § 6.03 (14th ed. 1974).

The court in the *Peck* case seems not to have considered the fact that National Guarantee and other creditors were precluded by law from obtaining any other type of attachment, with the result that under the test being required by the court the property might never be exempt, absent a forced sale of the property initiated by National Guarantee. In view of the fact that National Guarantee's only remaining remedy was an action in rem to foreclose its lien, it seems the court may have been relying on learning ingrained from experience in applying the former repealed statute which protected homestead property only from sale.

Since creditors whose claims are not secured by liens when bankruptcy intervenes are precluded from obtaining an execution against any property of a discharged debtor and a creditor that already has a lien against exempt property has the remedy of foreclosure, the reasoning of the court is perplexing to say the least. Perhaps the court was thinking in terms of a sale under a writ of execution issued on the judgment and levied only on the property as an alternative to a foreclosure action. In such a proceeding the property is sold subject to prior liens.

As previously suggested in this opinion the court failed to note the exemption statute is in the disjunctive, and the court did not cite any Ohio case law to support its interpretation of the statute, which the court was obligated to do under the ruling in the *Baker* case, 182 F. 392 (6th Cir.1910).

In *In re Dixon*, 885 F.2d 327 (6th Cir. 1989), the court of appeals, citing *In re Peck*

---

or's exemption does not exist and therefore is not impaired. The court relied on the prior holding of this circuit in *In re Pine*, 717 F.2d 281, 282 (6th Cir.1983) that the avoidance power under 11 U.S.C. § 522(f) comes into play only after there has been a determination under § 522(b) of what property may be claimed as exempt. This reasoning was rejected by the Supreme Court in *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). The Court held that if property would be exempt but for a lien, it is exempt and the lien can be avoided. In a recent case the Fifth Circuit held that the matter of whether a debtor's exemption is impaired for the purpose of lien avoidance under 11 U.S.C. § 522(f)(1) is a question of federal rather than state law. *Matter of Henderson*, 18 F.3d 1305, 1309 (5th Cir.1994).

11. The lien created under 2329.02 of the Ohio Revised Code upon the filing of a certificate of judgment in the office of the clerk of the common pleas court of a county has been characterized as a statutory lien. *Verba v. Ohio Cas. Ins. Co.*, 851

F.2d 811, 814 (6th Cir.1988); *Feinstein v. Rogers*, 2 Ohio App.3d 96, 97–98, 440 N.E.2d 1207, 1209 (Ohio 1981). However, the lien does not qualify as a statutory lien under the Bankruptcy Code. 11 U.S.C. § 101(53); it does qualify as a judicial lien as defined by 11 U.S.C. § 101(36), which is made fully effective by statute. As noted by the court in the *Verba* case "a judgment lien is specific and *attaches* at the time the certificate of judgment is filed ... to all real estate owned by the judgment debtor within [the] country." 851 F.2d 811, 814. (Emphasis supplied.) If the lien "attaches" to the debtor's interest in real estate in the same manner as would an order of attachment served by a levying officer under § 2715.05 of the Ohio Revised Code, and both liens are enforceable by foreclosure, it is not clear why only the latter triggers a debtor's right to an exemption, especially when under the latter the levying officer may not sequester exempt property.

as authority, agreed with the contention of Ford Motor Credit Corporation that under the plain language of Ohio Rev.Code § 2329.66(A)(1) Ford's judicial lien did not impair the debtors' homestead exemption absent an attachment or other involuntary disposition of the property. The court of appeals also cited *Daugherty v. Central Trust Co.,* 28 Ohio St.3d 441, 504 N.E.2d 1100 (Ohio 1986), as authority for the statement that "Ohio law specifically mandates that the Ohio homestead exemption is effective only upon 'execution, garnishment, attachment or sale to satisfy a judgment order' [sic]." *Dixon,* 885 F.2d at 330.

The *Daugherty* case did not involve the residential exemption provided by section 2329.66(A)(1) but rather the wage exemption provided by section 2329.66(A)(13) of the Ohio Revised Code. The parties had stipulated that the wages at issue were exempt from garnishment in the hands of the debtor's employer. This was tantamount to a concession that the exemption was not contingent on an involuntary disposition of the wages. The question presented was whether the wages remained exempt from garnishment after deposit in the debtor's individual checking account at Central Bank. The court held the wages did indeed retain their status as exempt from garnishment under such circumstances. The remaining issue in the case was whether the wages were likewise protected from the bank's right of setoff. The court held they were not because the statute while exempting the wages from "execution, garnishment, attachment or sale to satisfy a judgment or order" did not specifically exempt the wages from setoff. The case is hardly authority for the view that under Ohio law the debtors' homestead exemption was not impaired by Ford Motor Credit Corporation's judicial lien. Again, as in the *Peck* case, the court does not explain why the trustee's lien under 11 U.S.C. § 544(a) was not an execution or Ford's judicial lien was not an attachment within the meaning of the statute, or how without violating the automatic stay or the order of discharge a different form of attachment might issue against the debtor's property after bankruptcy.

The appeal in *In re Moreland,* 21 F.3d 102 (6th Cir.1994), was from a ruling of the district court for the Southern District of Ohio, which, without citing *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), had ruled as had the Supreme Court a few months earlier that where there is no timely objection, property claimed as exempt by a debtor is exempt. *In re Moreland,* No. C–3–92–293, memorandum op. at 3–4, 1992 WL 738796 (S.D.Ohio, Oct. 29, 1992); 11 U.S.C. § 522(1). The district court then reasoned that the judicial lien of Ford Motor Credit Corporation was avoidable under 11 U.S.C. § 522(f)(1) as a lien which impaired an exemption to which the debtors would have been entitled under 11 U.S.C. § 522(b) but for the lien. This appears to be the result dictated by the ruling of the Supreme Court in the *Taylor* case.

The Sixth Circuit in *Moreland* reasoned that an objection to the homestead exemption claimed by the debtors would have served no purpose because the debtors were entitled to have the exemption preserved for their later use at such time as Ford Motor Credit Corporation might attempt to force a sale of the premises for satisfaction of its judicial lien. The problem presented by this scenario is that the forced sale might occur many years after bankruptcy when the debtor has paid down or paid off her home mortgage thereby increasing her equity in the residence. In such event there might be no need for the state court to subordinate Ford's judicial lien to the debtor's homestead exemption. In other words, the judicial lien that impaired the debtor's homestead exemption on the date of bankruptcy might not impair the exemption on the date of sale. If the right to exercise the homestead exemption is postponed until the date of sale, is the question of whether the lien impairs the exemption for purposes of avoidance under section 522(f)(1) to be determined on the facts as they existed on the date of bankruptcy, or on the facts as they exist on the date of sale? Moreover, if after paying down the home mortgage the debtor sells her home voluntarily she may be required to pay off the judicial lien of Ford Motor Credit Corporation at closing because her preserved exemption rights would not be operative when she voluntarily sells her resi-

dence. These and other possible intervening circumstances present difficulties in reconciling the decision of this circuit in the *Moreland* case with that of the Supreme Court in the *Stump* and *Owen* cases holding that exemptions are to be determined as of the date of bankruptcy and the *Taylor* case holding that absent a timely objection an exemption claimed by a debtor is allowed as of the date of bankruptcy whether or not the debtor was entitled to the exemption at that time.

The exemption of personal earnings under section 2329.66(A)(13) of the Ohio Revised Code conforms to the requirements of the Federal Consumer Credit Protection (Truth-in-Lending) Act, 15 U.S.C. §§ 1601–1693r.[12] The Act provides that a maximum of 25% of a person's aggregate disposable earnings for any work week or other pay period may be subjected to garnishment. *Matter of Brissette*, 561 F.2d 779 (9th Cir. 1977). Under this Act the exempt portion of a debtor's personal earnings cannot be sequestered by a garnishment. So much of a debtor's disposable earnings as are exempt from garnishment must be released to the debtor by the employer and only the nonexempt portion may be withheld for the judgment creditor. *Hodgson v. Christopher*, 365 F.Supp. 583 (D.N.D.1973). Under the test laid down in *Peck* and *Dixon* the exempt portion of a debtor's wages would never be exempt in a bankruptcy case because such portion is not subject to garnishment. Such a construction of the statute is precluded by the Consumer Credit Protection Act, which provides "[n]o court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section." Thus, a construction of section 2329.66(A)(13) of the Ohio Revised Code that the wage exemption provided thereby is not available to debtors seeking relief under the Bankruptcy Code because the exemption becomes available only when such wages are actually subjected to garnishment would appear to violate federal statutory law. Actually, the 1977 amendments to 15 U.S.C. § 1673(b)

make it clear that restrictions on garnishment do apply in bankruptcy cases other than cases under chapter 13 of title 11. In a chapter 13 proceeding a debtor may voluntarily commit more than 25% of his or her wages to the funding of a chapter 13 plan.

The construction of the Ohio exemption statute adopted in the *Peck*, *Dixon* and *Moreland* cases also raises anew the question of a debtor's right to avoid a nonpossessory, nonpurchase-money security interest in specified consumer goods under section 522(f)(2) of the Bankruptcy Code. That section of the Code provides that a debtor may avoid a nonpossessory, nonpurchase-money lien encumbering household furnishings, tools of the trade and professionally prescribed health aids, to the extent the lien impairs an exemption to which the debtor would have been entitled under subsection (b). If, however, a debtor is not entitled to an exemption in such property under Ohio law until the property is subjected to an attachment, the exemption never comes to fruition. This is because creditors holding discharged prepetition claims are precluded by 11 U.S.C. §§ 362(a) and 524(a) from obtaining an attachment. They are similarly precluded from obtaining an attachment by section 2715.05 of the Ohio Revised Code. The exemption never comes to fruition, except in the rare circumstance that such property is subject to both an attachment and a nonpossessory, nonpurchase-money lien when bankruptcy intervenes and the attaching creditor thereafter seeks to sell the property in satisfaction of its lien. This is an unlikely event where the property is subject to a prior consensual lien. *Murdock v. Blake*, 26 Utah 2d 22, 484 P.2d 164 (1971). Foreclosure of the consensual lien would not afford the debtor an exemption because the sale would be a voluntary sale in view of the fact the debtor granted the lien voluntarily. If the construction of section 2329.66(A) of the Ohio Revised Code reached in *In re Peck* and adopted in the *Dixon* and *Moreland* cases is carried to its logical extension, there may be no exemptions at all for Ohio debtors seeking relief under the Bankruptcy Code.

---

**12.** The Act was passed in 1968. The effective date of Subchapter II—Restrictions on Garnishment—was July 1, 1970. Section 1673(b) and (c) was amended in 1977 as part of the Tax Reduction Act.

The decision of the district court in the *Peck* case was not in accord with the prior decisions of the court for that district interpreting the Ohio exemption statutes, not in accord with other relevant provisions of the Ohio Revised Code, not in accord with Ohio case law, and not in accord with the decision of the United States Supreme Court in *White v. Stump*. Therefore, it is indeed unfortunate that that decision was adopted by the Sixth Circuit as declarative of Ohio law.

There is really no indication that the Ohio legislature in expanding the scope of section 2329.66 of the Ohio Revised Code to include under the aegis of that section the former homestead exemption and an exemption in lieu of homestead intended thereby to detract from the absolute nature of the exemption provided by the section. Rather, division (C) of section 2329.66 suggests that the purpose of incorporating the homestead exemption into this section was to make the homestead exemption, like all other exemptions provided by the section, an absolute exemption in both bankruptcy and nonbankruptcy cases.

The foregoing discussion of Ohio statutory and case law and prior rulings of this circuit may prove useful should the court of appeals have occasion to revisit in a bankruptcy case the question of the right of an individual debtor pursuant to 11 U.S.C. § 522(f) to avoid liens on property exempt under section 2329.66 of the Ohio Revised Code.

In any event, it is clear that under Kentucky law the homestead exemption provided for by KRS 427.060 is an absolute exemption available to an individual debtor upon the commencement of a bankruptcy case. Accordingly, the motion of the debtor pursuant to 11 U.S.C. § 522(f)(1) to avoid judicial liens as liens that impair his homestead exemption shall be sustained.

### *ORDER*

In conformity with the memorandum opinion of the court this day entered, the motion of the debtor pursuant to 11 U.S.C. § 522(f)(1) to avoid the judicial liens of National City Bank, Oakland Furniture Manufacturers, Inc. and Philip M. Bell Company as liens that impair the homestead exemption of the debtor in his residence at 3800 Windingbrook Court, Lexington, Fayette County, Kentucky, is hereby SUSTAINED.

EXHIBIT NO. 1

**H.B. 478**     **OHIO REVISED CODE: 1992 LEGISLATION**

(119th General Assembly)
(Amended Substitute House Bill Number 478)

File 280

# AN ACT

eff 1-14-93; 4-14-93

To amend sections 2305.25, 2329.66, 2716.02, 2716.03, 2716.05, 3351.07, 3351.13, 3351.131, 3701.021 to 3701.025, 3727.11, 3901.21, 3902.11, 3923.021, 3923.51, 4730.01, 4730.02, 4730.03 to 4730.06, 4731.22, 4765.01, 4765.17, 5101.571, 5111.01, 5111.013, 5111.75 to 5111.81, 5112.19, 5113.02, 5115.01, 5119.61, 5153.16, and 5747.01 and to enact sections 1731.01 to 1731.09, 2716.021, 2716.051, 3701.026 to 3701.028, 3701.145, 3702.01 to 3702.05, 3702.71 to 3702.81, 3727.121, 3729.01 to 3729.03, 3729.05, 3729.10 to 3729.12, 3729.14 to 3729.18, 3729.21 to 3729.24, 3729.26, 3729.27, 3729.29, 3729.36, 3729.40, 3729.41, 3729.43, 3729.45, 3729.46, 3729.55, 3729.61, 3729.99, 3901.042, 3901.71, 3902.21 to 3902.23, 3923.022, 3923.55 to 3923.59, 3924.01 to 3924.14, 3924.21, 3924.25, 4723.51 to 4723.60, 4731.225, 4731.65 to 4731.71, 4731.85, 4769.01 to 4769.03, 4769.05 to 4769.10, 5111.014, 5111.771, 5111.811, 5111.82, 5113.11, 5115.11 and 5120.55 of the Revised Code, and to repeal Section 9 of Am. Sub. H.B. 257 of the 118th General Assembly, as most recently amended by Am. Sub H.B. 298 of the 119th General Assembly, relative to the underwriting and rating practices applicable to small employer health benefit plans; establishment of the Ohio Small Employer Health Reinsurance Program; agreements between small employer health care alliances and insurers to provide health care coverage for small employers; open enrollment by insurers; creation of the Ohio Children's Health Care Program renewal of, and pre-existing condition limitations on, individual sickness and accident insurance policies; income tax deductions for self-employed individuals who purchase health insurance coverage; mandated benefits for child health supervision services; application of certain mandated health benefits provisions; limitations on administrative expenses for sickness and accident insurers; coordination of benefits; refunds for identifying errors on provider billing statements; use of standard health benefit forms; peer review committees of insurers; creation of the Ohio Health Care Board; creation of the Joint Legislative Committee on Medicaid and Health Care Oversight; creation of the Ohio Health Data Center; exemption of certain property from satisfaction of debts incurred for health

care; restrictions on balance billing of certain Medicare beneficiaries; conflict-of-interest limitations on patient referrals; employment of physician assistants by group practices; creation of the Physician Loan Repayment Program; recognition of physicians who volunteer services; emergency medical technicians; establishment of a hemophilia advisory committee; establishment of a Hemophilia Insurance Pilot Program; administration of the Program for Medically Handicapped Children; physician recruitment by the Department of Rehabilitation and Correction; authority of advanced practice nurses under certain university-sponsored health programs; temporary administration of money by the Ohio Student Loan Commission pursuant to a contract to assist in administration of a loan or loan plan; elimination of the authority of advanced practice nurses under university-sponsored health programs on January 1, 1996, by repealing sections 4723.51, 4723.52, 4723.53, 4723.54, 4723.55, 4723.56, 4723.57, 4723.58, 4723 59, and 4723.60 of the Revised Code on that date; elimination of the Physician Loan Repayment Program five years after the effective date of this act by repealing sections 3702.71, 3702.72, 3702.73, 3702.74, 3702.75, 3702.76, 3702.77, 3702.78, 3702.79, 3702.80, and 3702.81 of the Revised Code on that date, and to declare an emergency.

*Be it enacted by the General Assembly of the State of Ohio*

SECTION 1. That sections 2305.25, 2329.66, 2716.03, 2716 03, 2716.05, 3351.07, 3351.13, 3351.131, 3701.021, 3701.022, 3701.023, 3701.024, 3701.025, 3727.11, 3901.21, 3902.71, 3923.021, 3923.51, 4730.01, 4730.02, 4730.03, 4730.04, 4730.05, 4730.06, 4731.22, 4765.01, 4765.17, 5101.571, 5111.01, 5111.013, 5111 75, 5111.76, 5111.77, 5111.78, 5111.79, 5111.80, 5111.81, 5112.19, 5113.02, 5115.01, 5119.61, 5153.16, and 5747.01 be amended and sections 1731.01, 1731.02, 1731.03, 1731.04, 1731.05, 1731.06, 1731.07, 1731.08, 1731.09, 2716.021, 2716.051, 3701.026, 3701.027, 3701.028, 3701 145, 3702.01, 3702.02, 3702.03, 3702.04, 3702.05, 3702.71, 3702.72, 3702.73, 3702 74, 3702.75, 3702.76, 3702.77, 3702.78, 3702.79, 3702.80, 3702.81, 3727.121, 3729.01, 3729.03, 3729.05, 3729.10, 3729.11, 3729.12, 3729.14, 3729 15, 3729.16, 3729.17, 3729.18, 3729.21, 3729.22, 3729.23, 3729.24, 3729.26, 3729.27, 3729.29, 3729.36, 3729.40, 3729.41, 3729.43, 3729.45, 3729.46, 3729.55, 3729.61, 3729.99, 3901.042, 3901.71, 3902.21, 3902.22, 3902 23, 3923.022, 3923.55, 3923.56, 3923.57, 3923.58, 3923.59, 3924.01, 3924.02, 3924.03, 3924.04, 3924.05, 3924 06, 3924.07, 3924.08, 3924.09, 3924.11, 3924.12, 3924.13, 3924.14, 3924.21, 3924.25, 4723.51, 4723.52, 4723.53, 4723.54, 4723.55, 4723.56, 4723.57, 4723.58, 4723.59, 4723.60, 4731.225, 4731.65, 4731.66, 4731.67, 4731.68, 4731.69, 4731.70, 4731.71, 4731.85, 4769.01, 4769.02, 4769.03, 4769.05, 4769.06, 4769 07, 4769.08, 4769.09, 4769.10, 5111.014, 5111.771, 5111.811, 5111.82, 5113.11, 5115.11 and 5120.55 of the Revised Code be enacted to read as follows:

*   *   *   *

❖ Sec. 2329.66. (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

(1) ~~The~~ (a) IN THE CASE OF A JUDGMENT OR ORDER REGARDING MONEY OWED FOR HEALTH CARE SERVICES RENDERED OR HEALTH CARE SUPPLIES PROVIDED TO THE PERSON OR A DEPENDENT OF THE PERSON, ONE PARCEL OR ITEM OF REAL OR PERSONAL PROPERTY THAT THE PERSON OR A DEPENDENT OF THE PERSON USES AS A RESIDENCE DIVISION (A)(1)(a) OF THIS SECTION DOES NOT PRECLUDE, AFFECT, OR INVALIDATE THE CREATION UNDER THIS CHAPTER OF A JUDGMENT LIEN UPON THE EXEMPTED PROPERTY BUT ONLY DELAYS THE ENFORCEMENT OF THE LIEN UNTIL THE PROPERTY IS SOLD OR OTHERWISE TRANSFERRED BY THE OWNER OR IN ACCORDANCE WITH OTHER APPLICABLE LAWS TO A PERSON OR ENTITY OTHER THAN THE SURVIVING SPOUSE OR SURVIVING MINOR CHILDREN OF THE JUDGMENT DEBTOR. EVERY PERSON WHO IS DOMICILED IN THIS STATE MAY HOLD EXEMPT FROM A JUDGMENT LIEN CREATED PURSUANT TO DIVISION (A)(1)(a) OF THIS SECTION HIS INTEREST, NOT TO EXCEED FIVE THOUSAND DOLLARS, IN THE EXEMPTED PROPERTY.

(b) IN THE CASE OF ALL OTHER JUDGMENTS AND ORDERS, THE person's interest, not to exceed five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence.

(2) ~~The~~ (a) IN THE CASE OF A JUDGMENT OR ORDER REGARDING MONEY OWED FOR HEALTH CARE SERVICES RENDERED OR HEALTH CARE SUPPLIES PROVIDED TO THE PERSON OR A DEPENDENT OF THE PERSON, ONE MOTOR VEHICLE:

(b) IN THE CASE OF ALL OTHER JUDGMENTS AND ORDERS, THE person's interest, not to exceed one thousand dollars, in one motor vehicle.

*   *   *   *

556

EXHIBIT NO. 2

## OHIO REVISED CODE: 1979 LEGISLATION

(Amended Substitute House Bill No 874)

File 116

# AN ACT

eff. 9-28-79

To amend sections 1311.05, 1311.34, 1313.18, 1313.36, 1775.24, 1911.33, 2127.26, 2323.09, 2329.66, 2329.67, 2329.68, 2329.69, 2329.72, 2715.11, 3115.21, 3923.19, 4399.04, 6309.70, and 6719.08, to amend for purposes of adopting a new section number as indicated in parentheses section 2329.72 (2329.661), to enact section 2329.802, and to repeal sections 521.09, 741.16, 741.47, 2329.62, 2329.821, 2329.73, 2329.74, 2329.75, 2329.76, 2329.77, 2329.78, 2329.79, 2329 80, 2329.91, and 2329.82 of the Revised Code to prevent the exemptions specified in the Bankruptcy Reform Act of 1978 from becoming automatically effective in this state on October 1, 1979, to revise this state's statutes governing exemptions from execution, garnishment, and attachment, to repeal section 2329.662 of the Revised Code four years after the effective date of this act unless reenacted by subsequent legislation, and to declare an emergency.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That sections 1311.05, 1311.34, 1313.18, 1313.36, 1775.24, 1911.33, 2127.26, 2323.09, 2329.66, 2329.67, 2329.68, 2329.69, 2329.72, 2715.11, 3115.21, 3923.19, 4399.04, 6309.70, and 6719.08 be amended, section 2329.72 (2329.661) be amended for purposes of adopting a new section number as indicated in parentheses, and section 2329.662 of the Revised Code be enacted to read as follows:

* * * *

● Sec. 2329.66. (A) Every person who is ~~the chief support of a family or who is a person paying alimony maintenance or other allowance for the support of a divorced or separated spouse or for the support of a minor child, or in the chief support of any dependent person, and every widow~~ DOMICILED IN THIS STATE may hold property exempt from execution, GARNISHMENT, attachment, or sale ~~for debt, damage, fine, or amercement~~ TO SATISFY A JUDGMENT OR ORDER, as follows:

~~(A) The wearing apparel of such person or family, the beds, bedsteads, and bedding for their use, one cooking stove and pipe, one stove and pipe used for warming the dwelling, and fuel sufficient for a period of sixty days, actually provided and designed for use of such person or family;~~

~~(B) Livestock or household furnishings not exceeding six hundred dollars in value to be selected by the debtor;~~

~~(C) All books used in the family, and all family pictures;~~

~~(D) Provisions actually provided and designed for the use of such person or family, not exceeding two hundred fifty dollars in value, to be selected by the debtor;~~

~~(E) The tools and implements of the debtor necessary in his profession trade or business, including agricultural, to be selected by him, not exceeding one hundred dollars in value;~~

~~(F) All articles, specimens, and cabinets of natural history or science, whether animal, vegetable, or mineral, except such as are kept or inhibited for show or exhibition for money or pecuniary gain;~~

(A)(1) THE PERSON'S INTEREST, NOT TO EXCEED FIVE THOUSAND DOLLARS, IN ONE PARCEL OR ITEM OF REAL OR PERSONAL PROPERTY THAT THE PERSON OR A DEPENDENT OF THE PERSON USES AS A RESIDENCE;

(2) THE PERSON'S INTEREST, NOT TO EXCEED ONE THOUSAND DOLLARS, IN ONE MOTOR VEHICLE;

(3) THE PERSON'S INTEREST, NOT TO EXCEED TWO HUNDRED DOLLARS IN ANY PARTICULAR ITEM, IN WEARING APPAREL, BEDS, AND BEDDING, AND THE PERSON'S INTEREST, NOT TO EXCEED THREE HUNDRED DOLLARS IN EACH ITEM, IN ONE COOKING UNIT AND ONE REFRIGERATOR OR OTHER FOOD PRESERVATION UNIT;

(4)(a) THE PERSON'S INTEREST, NOT TO EXCEED FOUR HUNDRED DOLLARS, IN CASH ON HAND, MONEY DUE AND PAYABLE, MONEY TO BECOME DUE WITHIN NINETY DAYS, TAX REFUNDS, AND MONEY ON DEPOSIT

WITH A BANK, BUILDING AND LOAN ASSOCIATION, SAVINGS AND LOAN ASSOCIATION, CREDIT UNION, PUBLIC UTILITY, LANDLORD, OR OTHER PERSON. THIS DIVISION APPLIES ONLY IN BANKRUPTCY PROCEEDINGS. THIS EXEMPTION MAY INCLUDE THE PORTION OF PERSONAL EARNINGS THAT IS NOT EXEMPT UNDER DIVISION (A)(13) OF THIS SECTION.

(b) SUBJECT TO DIVISION (A)(4)(d) OF THIS SECTION, THE PERSON'S INTEREST, NOT TO EXCEED TWO HUNDRED DOLLARS IN ANY PARTICULAR ITEM, IN HOUSEHOLD FURNISHINGS, HOUSEHOLD GOODS, APPLIANCES, BOOKS, ANIMALS, CROPS, MUSICAL INSTRUMENTS, FIREARMS, AND HUNTING AND FISHING EQUIPMENT, THAT ARE HELD PRIMARILY FOR THE PERSONAL, FAMILY, OR HOUSEHOLD USE OF THE PERSON

(c) SUBJECT TO DIVISION (A)(4)(d) OF THIS SECTION, THE PERSON'S INTEREST IN ONE OR MORE ITEMS OF JEWELRY, NOT TO EXCEED FOUR HUNDRED DOLLARS IN ONE ITEM OF JEWELRY AND NOT TO EXCEED TWO HUNDRED DOLLARS IN EVERY OTHER ITEM OF JEWELRY

(d) DIVISIONS (A)(4)(b) AND (A)(4)(c) OF THIS SECTION DO NOT INCLUDE ITEMS OF PERSONAL PROPERTY LISTED IN DIVISION (A)(3) OF THIS SECTION.

IF THE PERSON DOES NOT CLAIM AN EXEMPTION UNDER DIVISION (A)(1) OF THIS SECTION, THE TOTAL EXEMPTION CLAIMED UNDER DIVISION (A)(4)(b) OF THIS SECTION SHALL BE ADDED TO THE TOTAL EXEMPTION CLAIMED UNDER DIVISION (A)(4)(c) OF THIS SECTION AND THE TOTAL SHALL NOT EXCEED TWO THOUSAND DOLLARS IF THE PERSON CLAIMS AN EXEMPTION UNDER DIVISION (A)(1) OF THIS SECTION, THE TOTAL EXEMPTION CLAIMED UNDER DIVISION (A)(4)(b) OF THIS SECTION SHALL BE ADDED TO THE TOTAL EXEMPTION CLAIMED UNDER DIVISION (A)(4)(c) OF THIS SECTION AND THE TOTAL SHALL NOT EXCEED ONE THOUSAND FIVE HUNDRED DOLLARS

(5) THE PERSON'S INTEREST, NOT TO EXCEED AN AGGREGATE OF SEVEN HUNDRED FIFTY DOLLARS, IN ALL IMPLEMENTS, PROFESSIONAL BOOKS, OR TOOLS OF HIS PROFESSION, TRADE, OR BUSINESS, INCLUDING AGRICULTURE;

(6)(a) THE PERSON'S INTEREST IN A BENEFICIARY FUND SET APART, APPROPRIATED, OR PAID BY A BENEVOLENT ASSOCIATION OR SOCIETY, AS EXEMPTED BY SECTION 2329.63 OF THE REVISED CODE;

(b) THE PERSON'S INTEREST IN CONTRACTS OF LIFE OR ENDOWMENT INSURANCE OR ANNUITIES, AS EXEMPTED BY SECTION 3911.10 OF THE REVISED CODE;

(c) THE PERSON'S INTEREST IN A POLICY OF GROUP INSURANCE OR THE PROCEEDS OF SUCH A POLICY, AS EXEMPTED BY SECTION 3917.05 OF THE REVISED CODE;

(d) THE PERSON'S INTEREST IN MONEY, BENEFITS, CHARITY, RELIEF, OR AID TO BE PAID, PROVIDED, OR RENDERED BY A FRATERNAL BENEFIT SOCIETY, AS EXEMPTED BY SECTION 3921.18 OF THE REVISED CODE,

(e) THE PERSON'S INTEREST IN THE PORTION OF BENEFITS UNDER POLICIES OF SICKNESS AND ACCIDENT INSURANCE AND IN LUMP SUM PAYMENTS FOR DISMEMBERMENT AND OTHER LOSSES INSURED UNDER SUCH POLICIES, AS EXEMPTED BY SECTION 3923.19 OF THE REVISED CODE,

(7) THE PERSON'S PROFESSIONALLY PRESCRIBED OR MEDICALLY NECESSARY HEALTH AIDS;

(8) THE PERSON'S INTEREST IN A BURIAL LOT, INCLUDING, BUT NOT LIMITED TO, EXEMPTIONS UNDER SECTION 517.09 OR 1721.07 OF THE REVISED CODE;

(9) THE PERSON'S INTEREST IN:

(a) MONEYS PAID OR PAYABLE FOR LIVING MAINTENANCE OR RIGHTS, AS EXEMPTED BY SECTION 3304.19 OF THE REVISED CODE;

(b) WORKER'S COMPENSATION, AS EXEMPTED BY SECTION 4123.67 OF THE REVISED CODE,

(c) UNEMPLOYMENT COMPENSATION BENEFITS, AS EXEMPTED BY SECTION 4141.32 OF THE REVISED CODE;

(d) AID TO DEPENDENT CHILDREN PAYMENTS, AS EXEMPTED BY SECTION 5107.12 OF THE REVISED CODE.

(e) POOR RELIEF PAYMENTS, AS EXEMPTED BY SECTION 5113.01 OF THE REVISED CODE

(10)(a) THE PERSON'S RIGHT TO A PENSION, BENEFIT, ANNUITY, OR RETIREMENT ALLOWANCE AND TO ACCUMULATED CONTRIBUTIONS, AS EXEMPTED BY SECTION 145.56, 146.13, 742.47, 3307.71, 3309.66, OR 5505.22 OF THE REVISED CODE, AND THE PERSON'S RIGHT TO BENEFITS FROM THE POLICEMEN AND FIREMEN'S DEATH BENEFIT FUND;

(b) THE PERSON'S RIGHT TO RECEIVE A PAYMENT UNDER ANY PENSION, ANNUITY, OR SIMILAR PLAN OR CONTRACT, NOT INCLUDING A PAYMENT FROM A STOCK BONUS OR PROFIT SHARING PLAN OR A PAYMENT INCLUDED IN DIVISION (A)(6)(b) OR (A)(10)(a) OF THIS SECTION, ON ACCOUNT OF ILLNESS, DISABILITY, DEATH, AGE, OR LENGTH OF SERVICE, TO THE EXTENT REASONABLY NECESSARY FOR THE SUPPORT OF THE PERSON AND ANY OF HIS DEPENDENTS, EXCEPT IF ALL THE FOLLOWING APPLY:

(i) THE PLAN OR CONTRACT WAS ESTABLISHED BY OR UNDER THE AUSPICES OF AN INSIDER THAT EMPLOYED THE PERSON AT THE TIME HIS RIGHTS UNDER THE PLAN OR CONTRACT AROSE.

(ii) THE PAYMENT IS ON ACCOUNT OF AGE OR LENGTH OF SERVICE;

(iii) THE PLAN OR CONTRACT IS NOT QUALIFIED UNDER THE INTERNAL REVENUE CODE OF 1954, 68A STAT. 3, 26 U.S.C.1, AS AMENDED.

(11) THE PERSON'S RIGHT TO RECEIVE ALIMONY, CHILD SUPPORT, AN ALLOWANCE, OR MAINTENANCE TO THE EXTENT REASONABLY NECESSARY FOR THE SUPPORT OF THE PERSON AND ANY OF HIS DEPENDENTS;

(12) THE PERSON'S RIGHT TO RECEIVE, OR MONEYS RECEIVED DURING THE PRECEDING TWELVE CALENDAR MONTHS FROM ANY OF THE FOLLOWING:

(a) AN AWARD OF REPARATIONS UNDER SECTIONS 2743.51 TO 2743.72 OF THE REVISED CODE, TO THE EXTENT EXEMPTED BY DIVISION (D) OF SECTION 2743.66 OF THE REVISED CODE;

(b) A PAYMENT ON ACCOUNT OF THE WRONGFUL DEATH OF AN INDIVIDUAL OF WHOM THE PERSON WAS A DEPENDENT ON THE DATE OF THE INDIVIDUAL'S DEATH, TO THE EXTENT REASONABLY NECESSARY FOR THE SUPPORT OF THE PERSON AND ANY OF HIS DEPENDENTS;

(c) A PAYMENT, NOT TO EXCEED FIVE THOUSAND DOLLARS, ON ACCOUNT OF PERSONAL BODILY INJURY, NOT INCLUDING PAIN AND SUFFERING OR COMPENSATION FOR ACTUAL PECUNIARY LOSS, OF THE PERSON OR AN INDIVIDUAL FOR WHOM THE PERSON IS A DEPENDENT;

(d) A PAYMENT IN COMPENSATION FOR LOSS OF FUTURE EARNINGS OF THE PERSON OR AN INDIVIDUAL OF WHOM THE PERSON IS OR WAS A DEPENDENT, TO THE EXTENT REASONABLY NECESSARY FOR THE SUPPORT OF THE DEBTOR AND ANY OF HIS DEPENDENTS.

(13) Except as provided in section 3113.21 of the Revised Code, personal earnings of the debtor PERSON owed to him for services rendered within thirty days before the issuing of an attachment or other process, the rendition of a judgement, or the making of an order, under which the attempt may be made to subject such earnings to the payment of a debt, damage, fine, or amercement, in an amount equal to the greater of the following amounts:

(a) If paid weekly, thirty times the current federal minimum hourly wage; if paid biweekly BIWEEKLY, sixty times the current federal minimum hourly wage; if paid semi-monthly SEMIMONTHLY, sixty-five times the current federal minimum hourly wage; or if paid monthly, one hundred thirty times the current federal minimum hourly wage which is in effect at the time the earnings are payable, as prescribed by the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C. 206 (a) (1), and any amendments or additions thereto or reenactment thereof AS AMENDED.

(b) Seventy-five per cent of the disposable earnings owed to the debtor PERSON

(14) THE PERSON'S RIGHT IN SPECIFIC PARTNERSHIP PROPERTY, AS EXEMPTED BY DIVISION (B)(3) OF SECTION 1775.24 OF THE REVISED CODE;

(15) A SEAL AND OFFICIAL REGISTER OF A NOTARY PUBLIC, AS EXEMPTED BY SECTION 147.04 OF THE REVISED CODE

(16) ANY OTHER PROPERTY THAT IS SPECIFICALLY EXEMPTED FROM EXECUTION, ATTACHMENT, GARNISHMENT, OR SALE BY FEDERAL STATUTES OTHER THAN THE "BANKRUPTCY REFORM ACT OF 1978," 92 STAT. 2649, 11 U.S.C.A 101 ET SEQ., AS AMENDED.

(17) THE PERSON'S INTEREST, NOT TO EXCEED FOUR HUNDRED DOLLARS, IN ANY PROPERTY, EXCEPT THAT THIS DIVISION APPLIES ONLY IN BANKRUPTCY PROCEEDINGS.

*   *   *   *

558

SECTION 2 That existing sections 1311.06, 1311.34, 1313.18, 1313.36, 1775.24, 1911.33, 2127 26, 2323.09, 2329.66, 2329.67, 2329.68, 2329.69, 2329.72, 2715.11, 3113.21, 3923.19, 4399.04, 5309.70, and 5719.08, and sections 521.09, 741.16, 741.47, 2329.62, 2329.621, 2329.73, 2329.74, 2329.75, 2329.76, 2329.77, 2329.78, 2329.79, 2329.80, 2329 81, and 2329.82 of the Revised Code are hereby repealed.

SECTION 3. Section 2329.662 of the Revised Code is hereby repealed four years after the effective date of this act unless reenacted by subsequent legislation.

SECTION 4. This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. The reason for the necessity lies in the fact that the exemptions provided for in the Bankruptcy Reform Act of 1978, 92 Stat 2549, will go into automatic effect in bankruptcy proceedings in Ohio on October 1, 1979, unless this state enacts legislation that specifically does not authorize the use of such exemptions in this state; and that stability and certainty in commercial transactions and judicial proceedings urgently require that exemptions for bankruptcy proceedings in this state not be changed except as determined by the General Assembly in accordance with the public policies of this state. Therefore, this act shall go into immediate effect.

# EXHIBIT NO. 3

## OHIO REVISED CODE: 1977 LEGISLATION

● Sec 2329.66. Every person who is the chief support of a family, or who is a person paying alimony, maintenance, or other allowance for the support of a divorced or separated spouse, or for the support of a minor child, or is the chief support of any dependent person, and every widow may hold property exempt from execution, attachment, or sale, for debt, damage, fine, or amercement, as follows.

(A) The wearing apparel of such person or family, the beds, bedsteads, and bedding for their use, one cooking stove and pipe, one stove and pipe used for warming the dwelling, and fuel sufficient for a period of sixty days, actually provided and designed for use of such person or family;

(B) Livestock or household furnishings not exceeding six hundred dollars in value to be selected by the debtor;

(C) All books used in the family, and all family pictures;

(D) Provisions actually provided and designed for the use of such person or family, not exceeding one hundred fifty dollars in value, to be selected by the debtor;

(E) The tools and implements of the debtor necessary for carrying on his profession, trade, or business, including agriculture, to be selected by him, not exceeding six hundred dollars in value,

(F) All articles, specimens, and cabinets of natural history or science, whether animal, vegetable, or mineral, except such as are kept or intended for show or exhibition for money or pecuniary gain;

(G) Except as provided in section 3113.41 3113.21 of the Revised Code, personal earnings of the debtor owed to him for services rendered within thirty days before the issuing of an attachment or other process, the rendition of a judgment, or the making of an order, under which the attempt may be made to subject such earnings to the payment of a debt, damage, fine, or amercement, in an amount equal to the greater of the following amounts:

(1) If paid weekly, thirty times the current federal minimum hourly wage; if paid bi-weekly, sixty times the current federal minimum hourly wage; if paid semi-monthly, sixty-five times the current federal minimum hourly wage; or if paid monthly, one hundred thirty times the current federal minimum hourly wage which is in effect at the time the earnings are payable, as prescribed by the "Fair Labor Standards Act of 1938," 52 Stat. 1000, 29 U.S.C. 206 (a) (1), and any amendments or additions thereto or reenactment thereof.

(2) Seventy-five per cent of the disposable earnings owed to the debtor.

EXHIBIT NO. 4

# MEMO

**To:** Judge Lee
**From:** Dee Dunn
**Subject:** Legislative history of exemptions statutes in Ohio
**Date:** April 28, 1995

Revised Statutes    RS    1875-1910

General Code    GC    1910-1953

Revised Code    RC    1953-present

| RS | GC | RC | |
|----|----|----|----|
| 5435 | 11730 | 2329.73 | Rep 1979 |
| 5436 | 11731 | 2329.74 | Rep 1979 |
| 5437 | 11732 | 2329.75 | Rep 1979 |
|  | 11733 | 2329.76 | Rep 1979 |
| 5438 | 11734 | 2329.77 | Rep 1979 |
| 5439 | 11735 | 2329.78 | Rep 1979 |
|  | 11736 | 2329.79 | Rep 1979 |
| 5440 | 11737 | 2329.80 Amended 1953 | Rep 1979 |
| 5441 | 11738 | 2329.81 | Rep 1979 |

I have listed above the sections you were researching. As you can see from the chart only one section changed in the period between the adoption of the Revised Code and the 1979 Repeal legislation. A copy is attached. No amendments occurred between 1910 and 1953. I enclose copies of the General Code provisions.